The STATE of Ohio, Appellant,

v.

ETHERINGTON, Appellee.

</div>

[Cite as *State v. Etherington*, 172 Ohio App.3d 756, 2007-Ohio-4097.]

<div align="center">

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22002.

Decided Aug. 10, 2007.

</div>

758

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Jill R. Sink, Assistant Prosecuting Attorney, for appellant.

Cicero & Kollin, P.L.L., and Lori R. Withers, for appellee.

BROGAN, Judge.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from an order of the Common Pleas Court of Montgomery County granting the motion to suppress of defendant-appellee, James Etherington. Etherington was indicted for one count of possession of crack cocaine in an amount less than one gram in violation of R.C. 2925.11(A).

{¶ 2} On April 11, 2006, Detective Raymond St. Clair of the Dayton Police Department was conducting undercover surveillance of two pay phones at a car wash on the corner of East Third Street and Smithville Road in Dayton. At approximately 8:30 p.m., St. Clair witnessed the defendant, James Etherington, pull into the parking lot of the car wash, exit his vehicle, and use one of the payphones. When he finished making his call, Etherington returned to his vehicle and left the site. Suspecting that Etherington had just made a drug transaction, St. Clair followed Etherington to the intersection of North Harbine and Gaddis Boulevard, where Etherington stopped briefly at a yield sign. After one minute, St. Clair observed a second vehicle turn onto North Harbine from Gaddis and pull up alongside Etherington's vehicle. The two drivers engaged in a conversation. Then, St. Clair saw a black male pass his vehicle on the sidewalk proceeding toward Gaddis. When the unidentified male approached Etherington's vehicle, he stopped at the passenger side window and engaged Etherington in a short conversation. He then opened the passenger door and reached inside. Moments later, the unidentified male closed the door and walked away.

{¶ 3} Following this encounter, Etherington proceeded through the intersection with St. Clair continuing to follow him. Etherington turned left onto Gaddis without using his turn signal. Consequently, St. Clair, who was in an unmarked vehicle and plain clothes, contacted Officer Mark Kinstle, a uniformed officer with whom St. Clair had been relaying his observations, to initiate a traffic stop.

{¶ 4} Etherington drove to his residence on Jersey Street, where he parked his vehicle and proceeded to his front door. St. Clair pulled up momentarily and parked his vehicle in the middle of the street. Identifying himself as a Dayton police officer, St. Clair approached Etherington. At the same time, Officer Kinstle arrived on the scene and activated his overhead lights. Etherington retreated toward the front door and attempted to gain entry into his home just as St. Clair reached him. Together, they passed through the door and into a room where Etherington's mother and great-niece were watching television. During their struggle, Etherington took a packet containing crack cocaine from his shirt pocket and threw it onto a chair inside the house.

{¶ 5} Once he had restrained Etherington, St. Clair handed him over to Officer Kinstle. St. Clair then retrieved the packet from the chair; its contents ultimately tested positive for crack cocaine. Kinstle handcuffed Etherington and took him to his cruiser, at which time he placed Etherington under arrest and read him his *Miranda* warnings. Etherington acknowledged that he understood his rights. In response to whether the drugs were his and whether he had a drug problem, Etherington replied that "all he wanted to do was get a hit" and that he did have a crack problem, but he believed it was not out of control. Furthermore, Etherington stated that he ran from Detective St. Clair and threw the packet containing narcotics onto a chair inside the house because "he didn't want to be caught with his crack."

{¶ 6} Etherington filed a motion to suppress the evidence seized and the statements made. He contended that there was no probable cause or reasonable suspicion to believe that he was involved in criminal activity prior to being seized. Therefore, Etherington argued that the evidence, i.e., the crack cocaine and statements made to Officer Kinstle and Detective St. Clair, was recovered as a result of his unlawful search and seizure, and it must be suppressed. Following a hearing, the trial court agreed with Etherington and suppressed the evidence. The court found that Detective St. Clair lacked both probable cause and exigent circumstances in order to lawfully enter into Etherington's home without a warrant or consent. Specifically, the court held that Detective St. Clair's reliance on a minor-misdemeanor traffic violation did not create exigent circumstances sufficient to overcome the warrant requirement. Furthermore, the court found that the detective's observations of Etherington at the pay phone and in the intersection amounted to only a hunch of criminal activity, not a reasonable,

articulable suspicion that would permit a stop under *Terry v. Ohio* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The state appeals from the suppression order.

{¶ 7} The state's sole assignment of error is as follows:

{¶ 8} "The trial court erred in suppressing the rock of crack cocaine Detective St. Clair recovered from Etherington and the statements Etherington made to the officers after his arrest regarding the crack."

{¶ 9} The state contends that Detective St. Clair had a reasonable and articulable suspicion that Etherington was engaged in criminal activity, when taking into account the totality of the circumstances and the detective's observations as seen through the eyes of a reasonable and prudent officer with St. Clair's experience. Consequently, the state argues that St. Clair lawfully seized Etherington in order to prevent him from evading the search. Furthermore, the state claims that exigent circumstances existed because Etherington's mother and great-niece, who were inside the house when Etherington entered and threw the narcotics onto the chair, could have destroyed the evidence.

{¶ 10} When considering a motion to suppress, the trial court serves as the trier of fact; thus, it is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. In reviewing the trial court's decision, an appellate court must accept the trial court's factual findings if they are supported by competent evidence in the record. Id. Accepting those facts as true, the court of appeals must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court applied the proper legal standard to the facts of the case. Id. See, also, *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (finding that appellate review of determinations of reasonable suspicion and probable cause must be made independently and without deference to the trial court's determination).

{¶ 11} Upon review of the record, we find that the trial court erred in suppressing the crack cocaine retrieved by Detective St. Clair. St. Clair had a reasonable, articulable suspicion that Etherington had engaged in a drug transaction, based on the detective's observations, experience, and training. Furthermore, St. Clair's warrantless entry into Etherington's home did not violate the Fourth Amendment, where his suspicion escalated into probable cause, and Etherington's flight from the officers created exigent circumstances. Accordingly, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.

{¶ 12} It is well established that the police may stop and briefly detain people for investigative purposes based on a reasonable suspicion of criminal

activity. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. However, a "[r]easonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556–557, 591 N.E.2d 810. In *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, the Supreme Court held that the totality of the circumstances must be considered when determining what cause is sufficient to constitute a reasonable suspicion. Id. at 417, 101 S.Ct. 690, 66 L.Ed.2d 621. Moreover, an assessment of the totality of the circumstances includes two elements. Id. at 418, 101 S.Ct. 690, 66 L.Ed.2d 621. First, the assessment must be based upon all the circumstances, including "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." Id. A series of acts, each of which may be innocent in itself, may together constitute reasonable suspicion. *United States v. Arvizu* (2002), 534 U.S. 266, 275, 122 S.Ct. 744, 151 L.Ed.2d 740. Next, the process of assessing the totality of the circumstances must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. *Cortez,* 449 U.S. at 418, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 13} In light of the foregoing analysis, the Ohio Supreme Court has stated that the totality of the surrounding facts and circumstances of an individual case must be "viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271. A reviewing court, therefore, must consider the officer's experience and training, in addition to the evidence as it would be understood by an officer on the street. Id. at 88, 565 N.E.2d 1271.

{¶ 14} This court has found that an officer had reasonable suspicion that a defendant was engaged in an unlawful drug transaction when the officer testified that (1) he was familiar with the areas where drug activity was prevalent, (2) drug activity frequently occurred in the subject pay phone area, (3) the officer had between 20 and 30 contacts with drug activity in the subject area, and (4) the activity of the defendant and an unidentified person was consistent with drug transactions. *State v. Oglesby,* Montgomery App. No. 21648, 2006-Ohio-6229, 2006 WL 3411873, at ¶ 11. According to this court, the totality of the facts and circumstances, when viewed through the eyes of the officer and based on the officer's training, knowledge, and experience, presented reasonable suspicion of drug activity sufficient to justify a *Terry* investigatory stop. Id. at ¶ 16.

{¶ 15} Similarly, in *State v. Hardin,* Montgomery App. No. 21177, 2006-Ohio-3745, 2006 WL 2037253, this court found that there was a reasonable and articulable suspicion to stop a defendant when a sheriff deputy observed behavior

consistent with drug transactions, i.e., a man leaning into the passenger side window of a car and making an exchange. Id. at ¶ 15. This fact, combined with reports of a stolen vehicle and interconnected drug activity, justified the defendant's initial stop and continued detention. Id.

{¶ 16} In contrast, a history of drug activity in an area alone will not raise an officer's suspicion to the level justifying a *Terry* stop. *State v. Maldonado* (Sept. 24, 1993), Montgomery App. No. 13530, 1993 WL 402772. There, the officers' articulated reasons for their suspicion were based on the defendant coming from the doorway of a vacant apartment building in a high-frequency drug offense area, his putting a brown piece of paper in his pocket when he saw the police, and the fact that the defendant was a light-skinned Hispanic man in a primarily black neighborhood. Id. at *3. This court declined to find that these reasons constituted a reasonable suspicion of criminal activity; instead, we found that they amounted to only a hunch. Id. at *4. "Absent something more specific [than the incidence of crime in the area], such irregular acts do not suggest crime, whether they appear 'furtive' or not." Id.

{¶ 17} Here, Detective St. Clair testified that he was conducting undercover surveillance in response to complaints of drug activity. He further provided that he had previously made arrests in the same area and had seen people use the subject telephones to conduct drug transactions. On the night in question, St. Clair observed Etherington use the pay phone for 30 seconds and then return to his vehicle. He then observed Etherington stop at a yield sign in an intersection and engage in a conversation with the driver of a passing vehicle. While doing so, Etherington was approached by an unidentified black male from the passenger side. They also engaged in a conversation, during which time the unidentified man opened the passenger side door, reached in, withdrew, closed the door, and walked away.

{¶ 18} We find that the totality of the facts and circumstances of this case support a reasonable suspicion to stop Etherington. When viewed through the eyes of Detective St. Clair, and understood on the basis of his experience and training, the facts here present a reasonable suspicion of drug activity sufficient to justify a *Terry* investigatory stop. Therefore, the trial court erred in finding that St. Clair's observations merely created a hunch that drug activity was afoot.

{¶ 19} Our analysis, however, does not end there. Citing *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, the trial court correctly acknowledged that Detective St. Clair needed probable cause and exigent circumstances to lawfully enter Etherington's home without a warrant or consent. For the following reasons, we find these requirements satisfied.

{¶ 20} Probable cause to arrest exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. See, also, *State v. Timson* (1974), 38 Ohio St.2d 122, 67 O.O.2d 140, 311 N.E.2d 16, at paragraph one of the syllabus. Moreover, probable cause is a concept that must be based on the totality of the circumstances because it " 'deals with probabilities—the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act.' " *State v. Snyder* (Aug. 10, 1994), Montgomery App. No. 14089, 1994 WL 420918, at *2, quoting *State v. Ingram* (1984), 20 Ohio App.3d 55, 58, 20 OBR 58, 484 N.E.2d 227.

{¶ 21} In *Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, the Supreme Court recognized that flight from the approach of a law enforcement officer is a "strong indicia of mens rea." Id. at 66, 88 S.Ct. 1889, 20 L.Ed.2d 917. "Thus, if there already exists a significant degree of suspicion concerning a particular person (something more than presence in an area known for narcotics trafficking), the flight of the individual upon the approach of the police may be taken into account and may well elevate the pre-existing suspicion up to the requisite Fourth Amendment level of probable cause." 2 LaFave, Search and Seizure (4th Ed.2004) 357, Section 3.6(e).

{¶ 22} In the present matter, following the events that gave rise to a reasonable suspicion of drug activity, the record indicates that Etherington pulled up to his home, exited his car, and proceeded toward the front steps. Close behind, Detective St. Clair parked next to Etherington's car, exited his vehicle, and approached Etherington. As he approached, St. Clair identified himself as a Dayton police officer and stated that he wanted to talk. Simultaneously, Officer Kinstle arrived and turned on his patrol lights. When he saw the approaching detective and the lights of Kinstle's vehicle, Etherington quickly turned toward his front door and attempted to gain entry, with Detective St. Clair giving chase and finally catching him just at the threshold.

{¶ 23} We find that Etherington's flight from St. Clair after the detective identified himself as a Dayton police officer and after Officer Kinstle arrived and turned on his lights escalated St. Clair's reasonable suspicion of Etherington's involvement in a drug transaction to probable cause for his arrest.

{¶ 24} Next, a suspect may not thwart a lawful arrest by fleeing from a public place to a private place in order to evade police. *United States v. Santana* (1976), 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300. Pursuit of such a flight

satisfies the exigent-circumstance requirement for a warrantless entry of a dwelling to make an arrest.

{¶ 25} In *Santana,* police officers approached a woman standing in the doorway of her home and holding a bag that contained money used in an undercover operation to buy heroin. Id. at 40, 96 S.Ct. 2406, 49 L.Ed.2d 300. With probable cause to arrest her, the officers proceeded toward the woman and identified themselves as police. Id. In response, she retreated through the door and into the vestibule of the home. Id. The police followed and made the arrest. Id. Citing *United States v. Watson* (1976), 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, in which the court held that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment, the court found that the officers' entry into the respondent's home was justified, for there was probable cause to make an arrest, and the officers acted in hot pursuit of a fleeing criminal who retreated from a public place to a private one. Id. at 43, 96 S.Ct. 2406, 49 L.Ed.2d 300.

{¶ 26} Here, St. Clair was in hot pursuit the moment Etherington turned and fled toward the front door of his home after the detective identified himself as a Dayton police officer and approached the defendant for questioning. St. Clair pursued him, ultimately reaching him at the threshold of the door just as Etherington was crossing.

{¶ 27} Based on these facts, we find that St. Clair's entrance into Etherington's home without a warrant or consent was lawful. Etherington's flight in a public place elevated St. Clair's pre-existing suspicion of drug activity into probable cause. Furthermore, in an effort to prevent Etherington from defeating arrest by escaping to a private place, St. Clair acted properly in giving chase and ultimately crossing the threshold of the home in hot pursuit.

{¶ 28} Having found that St. Clair lawfully entered into Etherington's home, we hold that the exclusionary rule may not be relied upon to suppress the crack cocaine that Etherington threw from his shirt pocket once inside his home. Accordingly, the state's sole assignment of error is sustained. The judgment of the trial court suppressing this evidence is reversed. However, as the trial court failed to consider the voluntariness of the statements Etherington made to the officers, we remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF and GRADY, JJ., concur.