[Cite as *State v. McDonald*, 2017-Ohio-9250.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

STATE OF OHIO,

           PLAINTIFF-APPELLEE,

           v.

CORY D. MCDONALD,

           DEFENDANT-APPELLANT.

CASE NO. 13-17-27

O P I N I O N

Appeal from Seneca County Common Pleas Court
Trial Court No. 17 CR 0020

Judgment Affirmed

Date of Decision: December 26, 2017

APPEARANCES:

    *Danielle C. Kulik* for Appellant

    *Stephanie J. Kiser* for Appellee

Case No. 13-17-27

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Cory D. McDonald ("McDonald") appeals the judgment of the Seneca County Court of Common Pleas for denying his motion to suppress. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{¶2} Patrolman Brett Bethel ("Bethel") has worked for the Fostoria Police Department since 2007. Tr. 4. On January 19, 2017, he was preparing to go on his patrol when a detective reported to him that McDonald was suspected of transporting narcotics. Tr. 6. Bethel was familiar with McDonald and had cited him in the past for driving while his license was suspended. Tr. 14. The officers who had been on the afternoon patrol shift also told Bethel that McDonald had been spotted driving around town earlier that day in his regular vehicle. Tr. 10. In response to this information, Bethel had dispatch check McDonald's driving status in the Law Enforcement Automated Data System ("LEADS"). Tr. 6. Bethel consequently discovered that McDonald did not have a valid license at that time. Tr. 6. Later, during his shift, Bethel was parked in a lot by the side of the road. Tr. 7. In between 11:30 and 11:45 p.m., Bethel saw McDonald drive past him in a blue sedan. Tr. 14, 15. McDonald was the sole occupant of the vehicle. Tr. 6.

{¶3} Bethel testified that he was able to identify McDonald without difficulty because he had encountered McDonald "numerous times throughout [his] career in

-2-

Fostoria, specifically [McDonald] driving that specific vehicle." Tr. 7. McDonald also wore "distinctive eyeglasses," which Bethel could see from his vantage point on the side of the road. Tr. 7. Knowing that McDonald did not have a valid driver's license, Bethel decided to initiate a stop of McDonald's vehicle. Tr. 8. As the result of this stop, McDonald was found to be in possession of contraband and was arrested. Doc. 2.

{¶4} On February 22, 2017, McDonald was charged with failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), (C)(5)(a)(ii) and with possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a). Doc. 2. On March 1, 2017, McDonald filed a motion to suppress. Doc. 20. The trial court held a hearing on this motion on April 27, 2017. Tr. 1. Bethel testified as to his observations on the night of January 19, 2017, and stated that the basis of the stop of McDonald's vehicle was the fact that McDonald was driving without a valid driver's license. Tr. 5-8, 12.

{¶5} On cross examination, Bethel admitted that his police report characterized his request for dispatch to check McDonald's driver status as "random." Tr. 11. He indicated that this meant that this check was not part of work done for the drug task force. Tr. 11-12. On recross examination, the Defense again questioned Bethel about his use of the word "random" in the police report. Tr. 20. This exchange occurred as followed:

**Q. Random to me means like you picked his name out of a hat. You say—you said to the prosecutor this was a random running. How did you choose him to run then?**

**A. Because I was informed by—I was given intel by the drug detective as well as the road units from afternoon shift, but it was not for anything specific at that time, just be on the lookout, he's driving without a license.**

Tr. 20. In closing arguments, the Defense argued that this was a random check of McDonald's driving status that was conducted in violation of the Fourth Amendment. Tr. 23.

{¶6} On May 10, 2017, the trial court overruled McDonald's motion to suppress. Doc. 41. The trial court found that the traffic stop was based upon probable cause because Bethel knew that McDonald did not have a valid driver's license at the time that he saw McDonald driving. Doc. 41. On August 17, 2017, McDonald entered a plea of no contest to three charges against him: one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), (C)(5)(a)(ii); one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(b); and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), (B). Doc. 47, 48. McDonald was sentenced on September 8, 2017. Doc. 50. McDonald then filed his notice of appeal on September 14, 2017. Doc. 52.

*Assignment of Error*

**{¶7}** In this appeal, McDonald challenges the trial court's decision to deny his motion to suppress and raises one assignment of error, which reads as follows:

> **A trial court commits prejudicial error when an officer admits that he was looking for a reason to stop an individual in lieu of obtaining a search warrant.**

In this assignment of error, McDonald puts forward three arguments. First, he alleges that Bethel used LEADS inappropriately to run a driver's license status check in this case. Second, he points to a portion of Bethel's police report that characterizes the driver's license status check in this case as "random." He claims that such random driver's license checks are not permitted under the Fourth Amendment. Third, McDonald argues that the stop of his car was pretextual as he believes the only purpose of stopping his vehicle was to determine whether he was transporting narcotics. For these reasons, McDonald requests that this Court reverse the trial court's decision to overrule his motion to suppress.

*Legal Standard*

**{¶8}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Fourth Amendment, United States Constitution. The Ohio Constitution offers a parallel provision to the Fourth Amendment of the Federal Constitution that has been held to afford the same level of protection as the United States Constitution. *State v. Hoffman*, 141 Ohio St.3d

428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). "The primary purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers in order to 'safeguard the privacy and security of individuals against arbitrary [governmental] invasions.'" *State v. Carlson*, 102 Ohio App.3d 585, 592, 657 N.E.2d 591, 592 (9th Dist.1995), quoting *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), citing *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, "[t]he touchstone of the Fourth Amendment is reasonableness." *Id.*

{¶9} A reviewing court must first determine whether a search or seizure within the meaning of the Fourth Amendment occurred. "In determining whether a particular encounter constitutes a 'seizure,' and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding the encounter, a reasonable person would believe he or she was 'not free to leave,' or 'not free to decline the officers' requests or otherwise to terminate the encounter.'" *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211 (10th Dist.), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) and *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d

389 (1991). Accordingly, a police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment. *Prouse* at 653, citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 3082-3083, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975).

{¶10} Under the Fourth Amendment, law enforcement can conduct two types of constitutionally permissible traffic stops: (1) investigatory traffic stops and (2) traffic stops based on probable cause. *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 22. For an investigatory traffic stop to be valid, law enforcement must have a reasonable and articulable suspicion, under the totality of the circumstances, that a crime has been or is being committed. *State v. Shaffer*, 2013-Ohio-3581, 4 N.E.3d 400, ¶ 18 (3d Dist.), quoting *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For the second type of traffic stop, law enforcement must have probable cause. "Probable cause 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" *State v. Duvernay*, 2017-Ohio-4219, --- N.E.3d ---, ¶ 27 (3d Dist.), quoting *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, ¶ 18. "This Court has previously recognized that probable cause for a traffic stop is provided when an officer had

-7-

probable cause to believe that a traffic violation has occurred or was occurring." *State v. Blandin*, 3d Dist. Allen No. 1-06-107, 2007-Ohio-6418, ¶ 43, citing *State v. Phillips*, 3rd Dist. No. 8-04-25, 2006-Ohio-6338, at ¶ 18 (*rev'd on other grounds by State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 1).

{¶11} Random or pretextual traffic stops of vehicles that lack the minimum objective justification of reasonable suspicion are not permissible under the Fourth Amendment. *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237, 1239 (1984) (holding a random stop without reasonable suspicion is impermissible to "to check the validity of the operator's driver's license and the vehicle's registration."), citing *Prouse*, *supra*. If the officer does make a traffic stop with the required level of objective justification,

> **the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.**

*Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996).

{¶12} "Under appellate review, motions to suppress present 'mixed questions of law and fact.'" *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 18, quoting *State v. Yeaples*, 180 Ohio App.3d 720, 2009-Ohio-184, 907 N.E.2d 333, ¶ 20 (3d Dist.).

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's**

**findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.**

(Citations omitted.) *State v. James*, 2016-Ohio-7262, 71 N.E.3d 1257, ¶ 8 (3d Dist.), quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

*Legal Analysis*

{¶13} In this appeal, the Defense makes three key assertions. We will address each in turn. First, the Defense argues that Bethel inappropriately accessed McDonald's driver's license status in LEADS. Unauthorized use of LEADS is prohibited under Ohio law. R.C. 2913.04(C). "Police officers may only run queries and use the information for a legitimate law enforcement purpose." *State v. Moning*, 1st Dist. Hamilton No. C-010315, 2002-Ohio-5097, ¶ 2. In this case, Bethel's testimony makes clear that his LEADS check on McDonald's driver's license status was for a "valid law enforcement purpose." *State v. Garn*, 2017-Ohio-2969, --- N.E.3d ---, ¶ 43 (5th Dist.). Bethel was informed by a detective that McDonald was under investigation for drug trafficking and that McDonald had been seen driving around the area during the previous patrol shift. Tr. 6. In response, Bethel, who had cited McDonald in the past for driving while his license was suspended, investigated McDonald's driver's license status. This was a legitimate use of LEADS as Bethel was using law enforcement resources for the purpose of

furthering the objective of law enforcement. For this reason, Bethel's use of LEADS was not inappropriate as the appellant alleges.

{¶14} Second, the Defense argues that the driver's license status check was random and, therefore, impermissible under *Delaware v. Prouse, supra*. In support of this argument, the Defense points to Bethel's police report, which characterized the driver's status check as "random."[1] In making this assertion, the appellant errs by equating a driver's license status check in LEADS with the traffic stop of McDonald's vehicle. Under *Prouse*, law enforcement is not permitted to make random traffic stops without reasonable suspicion for the purpose of checking whether the driver is properly licensed. *Id*. at 657. In this case, Bethel did not make a random *traffic* stop. Rather, Bethel had probable cause to believe that McDonald was committing a traffic violation because, at the time of the traffic stop, Bethel had actual knowledge that McDonald was operating a motor vehicle without a valid driver's license.

{¶15} Third, the Defense argues that this traffic stop was a pretext for investigating whether McDonald was involved in the transportation of illegal narcotics and was, therefore, impermissible. In this case, Bethel knew who McDonald was and what type of vehicle McDonald drove. On the night of January

---

[1] Bethel's testimony at the suppression hearing indicates that he characterized this driver's license status check as "random" because it was not part of a systematic examination of driver's licenses or performed by the drug task force agent who was assigned to the formal investigation into McDonald's suspected drug trafficking activities. Tr. 6, 11. Bethel, however, did not examine McDonald's driver's license status in the absence of any rationale or through a process of total coincidence.

19, 2017, Bethel saw McDonald's car passing his patrol car and was able to identify McDonald as the driver of that vehicle. Since Bethel knew that McDonald did not have a valid driver's license, he knew that McDonald was committing a traffic violation. Bethel's stop was not, therefore, pretextual as he performed a traffic stop to investigate criminal behavior that he had witnessed. Even if Bethel suspected that McDonald was in the process of committing other crimes, these subjective beliefs do not negate the fact that Bethel was undertaking, at the time he initiated this traffic stop, an objectively valid investigation into criminal activity that he had observed firsthand. For these reasons, we find that this traffic stop was not unreasonable and was performed in compliance with the dictates of the Fourth Amendment.

## Conclusion

{¶16} After examining the facts in the record, we find that the trial court did not err in denying McDonald's motion to suppress. Thus, McDonald's sole assignment of error is overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Seneca County is affirmed.

**Judgment Affirmed**

**PRESTON, P.J. and SHAW, J., concur.**

**/hls**