[Cite as *State v. Smith*, 2018-Ohio-1444.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-17-50

    v.

DARIAN J. SMITH,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2017-0039

Judgment Affirmed

Date of Decision:  April 16, 2018

APPEARANCES:

    *Kenneth J. Rexford* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Darian J. Smith ("Smith") appeals the judgment of the Allen County Court of Common Pleas for denying his motion to suppress (1) the contents of a red jacket and (2) a statement he made to the police. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On February 16, 2017, Smith was charged with possession of heroin in violation of R.C. 2925.11(A)(C)(6)(e). Doc. 1. On March 3, 2017, he filed a motion to suppress. Doc. 12. At a suppression hearing on March 16, 2017, Patrolman Ben Thompson ("Thompson") testified that he was running license plates during his patrol on the night of January 24, 2016. Tr. 6. A Grand Marquis with expired license plates passed his patrol car. Tr. 7. As the driver was pulling into a driveway, Thompson activated his lights to initiate a stop of the vehicle. Tr. 8. As Thompson activated his lights, Smith—the driver of the Grand Marquis—exited the vehicle and "started to run northbound." Tr. 8. Thompson noticed that the driver was wearing a red jacket at this time. Tr. 8. Thompson then gave chase. Tr. 8.

{¶3} Smith ran into a house and shut the door behind him. Tr. 9. Thompson entered the house and noticed that the back door was open. Tr. 9. Thompson then ran out the back door and apprehended Smith shortly thereafter. Tr. 10. Smith was not wearing his red jacket at the time he was apprehended. Tr. 11. Thompson and another officer retraced the route of the pursuit and recovered Smith's red jacket.

Tr. 12. Ex. 1, 2. The police "checked the jacket to see if there was identification in it for the defendant." Tr. 14. The police found eighty-three grams of heroin in the jacket. Tr. 14. Doc. 2.

{¶4} Following Smith's apprehension, Investigator Dustin Brotherwood ("Inv. Brotherwood") interviewed Smith. Tr. 25, 27. The State submitted a recording of this interview. Ex. 4. Prior to the interview, the following exchange occurred between Inv. Brotherwood and Smith:

**Inv. Brotherwood: Do you know what your *Miranda* rights are?**

**Smith: My what?**

**Inv. Brotherwood: Your *Miranda* Rights.**

**Smith: What is that?**

**Inv. Brotherwood: Okay. I'm gonna explain them to you. If you got any questions let me know. We'll make sure you fully understand them. You have the right to remain silent. Anything you say or do can be used against you in court. You have the right to an attorney. If you can't afford one, one will be appointed to you by the courts. If you choose to start talking to me, anytime that we're talking, you have the right to stop talking until your attorney is present. Okay. Those are what's called your *Miranda* rights. Any questions about those?**

**Smith: No sir.**

Ex. 4. During the subsequent interview, Smith admitted that he was the driver of the Grand Marquis; that he ran from the police; and that the red jacket that was recovered at the scene was his. Tr. 33. Ex. 4.

**{¶5}** On April 12, 2017, the trial court denied the appellant's motion to suppress. Doc. 25. On August 10, 2017, the appellant pled no contest to the charge against him. Doc. 42. The trial court sentenced Smith on September 25, 2017. Doc. 49. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The trial court erred by not suppressing the contents of the red jacket.**

**Second Assignment of Error**

**The trial court erred by not suppressing the statement elicited from Mr. Smith.**

We will consider these assignments of error in the order in which they were presented in the appellant's brief.

*First Assignment of Error*

**{¶6}** In his first assignment of error, Smith advances two arguments against the trial court's decision to deny his motion to suppress the contents of a red jacket. First, Smith argues that the basis for the traffic stop was invalid. In this case, Smith was stopped for driving a vehicle with an expired registration. Smith argues that state law requires that license plates must be registered by December 31 of each year and not by the birthday of the vehicle owner. Smith then contends that he did not commit a traffic violation and that the police did not, therefore, have reasonable suspicion to conduct a traffic stop. Second, Smith challenges the search of his jacket. We will address these two arguments in separate analyses.

Legal Standard for the Traffic Stop

**{¶7}** A motion to suppress presents an appellate court with mixed questions of fact and law. *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 18. As trier of fact, the trial court is in the best position to evaluate the credibility of witnesses and resolve factual issues. *State v. James*, 2016-Ohio-7262, 71 N.E.3d 1257, ¶ 8 (3d Dist.). For this reason, the reviewing court is to accept the trial court's factual findings if these findings are supported by competent, credible evidence. *State v. McDonald*, 2017-Ohio-9250, --- N.E.3d ---, ¶ 12 (3d Dist.). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Sullivan*, 2017-Ohio-8937, --- N.E.3d ---, ¶ 11 (3d Dist.), quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶8}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Fourth Amendment, United States Constitution. In order to initiate a constitutionally permissible traffic stop, law enforcement must, at a minimum, have a reasonable, articulable suspicion to believe that a crime has been committed or is being committed. *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991).

{**¶9**} "The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'" *State v. Shaffer*, 2013-Ohio-3581, 4 N.E.3d 400, ¶ 18 (3d Dist.), quoting *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Kerr, supra*, at ¶ 15, quoting *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist. 1990).

{**¶10**} A police officer may initiate a traffic stop after witnessing a traffic violation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996). R.C. 4503.11(A) requires the owner of a motor vehicle that is driven on public roads to "to file annually the application for registration or to pay the tax therefor." R.C. 4503.10(A). R.C. 4503.101 reads, in its relevant part, as follows: "except as otherwise provided by rule, motor vehicles owned by an individual shall be registered *based upon the motor vehicle owner's date of birth*." (Emphasis added.) R.C. 4503.101(A). Further, "the registrations of passenger cars * * * owned by individuals shall expire on the individual's date of birth." O.A.C. 4501:1-7-03(F).

*See* R.C. 4503.101(B). The failure to register a passenger vehicle annually in violation of R.C. 4503.11(A) is a minor misdemeanor. R.C. 4503.11(D).

Legal Analysis of the Traffic Stop

**{¶11}** In this case, Thompson ran the plates of the Grand Marquis that Smith was driving on January 24, 2017. Tr. 6-7. Thompson found that the license plates on the Grand Marquis had expired on January 19, 2017. *Id.* As R.C. 4503.101(A) explains, the word "annually" in R.C. 4503.10(A) contemplates a one-year period that runs from the vehicle owner's birthday in one calendar year to vehicle owner's subsequent birthday in the following calendar year. The word "annually" does not refer to a one-year period running from January 1 to December 31. O.A.C. 4501:1-7-03(F). Vehicle owners are to register their passenger vehicles before their birthday in order to comply with R.C. 4503.10(A).

**{¶12}** In this case, the Grand Marquis that Smith was driving had not been registered by the vehicle owner's birthdate. Tr. 6-7. Thus, Smith was driving with an expired registration. For this reason, Thompson had a reasonable, articulable suspicion that a traffic violation was being committed and had legal justification to initiate a traffic stop. *State v. Alexander*, 8th Dist. Cuyahoga No. 83848, 2004-Ohio-3735, ¶ 12. Further, since Thompson was legally justified in initiating a traffic stop, he was legally justified in pursuing and seizing Smith after Smith refused to submit to Thompson's show of authority. *State v. Etherington*, 172 Ohio App.3d 756, 2007-Ohio-4097, 876 N.E.2d 1285, ¶ 22-24 (2d Dist.).

Legal Standard for the Search of the Red Jacket

**{¶13}** "A defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph two of the syllabus.

> **'Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'**

(Citations omitted.) *Id*. at 1048. "The State also bears the burden of establishing, by a preponderance of the evidence, that the defendant abandoned the property at issue." *State v. Dailey*, 3d Dist. Logan No. 8-10-01, 2010-Ohio-4816, ¶ 15.

Legal Analysis of the Search of the Red Jacket

**{¶14}** In this case, Thompson testified that Smith was wearing a red jacket when he exited the Grand Marquis and fled from the police. Tr. 8. By the time Smith was apprehended, however, he was no longer in possession of the red jacket, having apparently discarded this effect. Tr. 11. Thompson testified that he discovered the red jacket as he went from the location of Smith's apprehension to the location where the Grand Marquis was parked. Tr. 12. With this testimony, we

find that the State demonstrated, by a preponderance of evidence, that this property was voluntarily abandoned prior to Smith's apprehension. Thus, the abandoned property was not the fruit of an unreasonable seizure. *State v. Richardson*, 3d Dist. Seneca No. 13-06-21, 2007-Ohio-115, ¶ 22. Further, Smith did not have a reasonable expectation of privacy in this voluntarily abandoned property. *State v. Polk*, 150 Ohio St.3d 29, 2017-Ohio-2735, 78 N.E.3d 834, ¶ 27. For these reasons, he did not have standing to challenge the search and seizure of the red jacket. *Freeman* at 1048. Thus, Smith's first assignment of error is overruled.

*Second Assignment of Error*

{¶15} In his second assignment of error, Smith asserts that the *Miranda* warning he was given were inadequate, arguing the police failed to inform him that he could confer with counsel prior to being questioned. Smith, therefore, argues that his statements to police should have been suppressed.

Legal Standard

{¶16} Law enforcement officers must give *Miranda* warnings prior to custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda*, a defendant

> **must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.**

*Id*. at 478. *Miranda* warnings "are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), quoting *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

{¶17} "Police do not have to provide additional warnings to a suspect beyond what *Miranda* requires." *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 69. In the process of analyzing the adequacy of *Miranda* warnings, the Supreme Court of Ohio noted that

> **[f]ederal courts have * * * rejected challenges to the adequacy of *Miranda* warnings based on the absence of additional warnings. See, e.g., *United States v. Ricks* (C.A.6, 1993), 989 F.2d 501, unpublished opinion, 1993 WL 78781 (suspect need not be informed that he has the right to stop answering questions at any time); *United States v. Lares-Valdez* (C.A.9, 1991), 939 F.2d 688 (suspect need not be advised of the right to have questioning stopped at any time, of the option to answer some questions but not others, or that some questions may call for incriminating responses); *United States v. Caldwell* (C.A.8, 1992), 954 F.2d 496, 501-504 (suspect need not be explicitly advised of his right to counsel before and during questioning); *United States v. DiGiacomo* (C.A.10, 1978), 579 F.2d 1211, 1214 (no express requirement under Miranda to advise suspects of the right to terminate questioning).**

*Foust* at ¶ 70.

{¶18} "[T]here is no rigid rule requiring that the content of the *Miranda* warnings given to an accused prior to police interrogations be a virtual incantation of the precise language contained in the *Miranda* opinion." *State v. Dailey*, 53 Ohio

St.3d 88, 91, 559 N.E.2d 459 (1990). "Reviewing courts * * * need not examine Miranda warnings as if construing a will or defining the terms of an easement." *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). "Generally, 'the adequacy of Miranda warnings is treated as a question of law'" and is, thus, reviewed de novo. *United States v. Crumpton*, 824 F.3d 593, 604 (6th Cir. 2016), quoting *United State v. Wooten*, 602 Fed.Appx. 267, 272 (6th Cir. 2015). "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Florida v. Powell*, 130 S.Ct. 1195, 1240, 559 U.S. 50, 175 L.Ed.2d 1009 (2010), quoting *Duckworth* at 201.

Legal Analysis

**{¶19}** In this case, prior to custodial interrogation, Inv. Brotherwood gave Smith the following *Miranda* warning:

> **You have the right to remain silent. Anything you say or do can be used against you in court. You have the right to an attorney. If you can't afford one, one will be appointed to you by the courts. If you choose to start talking to me, anytime that we're talking, you have the right to stop talking until your attorney is present.**

Ex. 4. Smith argues this warning is deficient because it is missing an express statement that explains that he had the right to confer with counsel before being questioned. We find, however, that the context of this *Miranda* warning shows that this alleged deficiency does not exist. Smith was, in fact, informed that he had the right to confer with his attorney before questioning began.

**{¶20}** At the time this *Miranda* warning was issued, Inv. Brotherwood was speaking with Smith after they were seated in an interrogation room for questioning. At that moment, a warning that Smith had the right to confer with counsel prior to sitting down in an interrogation room with the police for questioning would have been of no benefit to Smith. Inv. Brotherwood instead communicated the substance of Smith's right to counsel in a way that was applicable to that particular context. As they were discussing Smith's *Miranda* rights before the questioning had begun, Inv. Brotherwood expressly advised Smith that he could stop the interview at any time and speak with counsel. Thus, Inv. Brotherwood clearly communicated to Smith that he could, at that moment, *before* any questions had been asked, stop the interview from proceeding and consult with his attorney.

**{¶21}** While this *Miranda* warning did not come in the form of Smith's preferred language, the deficiency he alleges does not exist. For this reason, Smith's argument has no merit. Further, we find that this statement contains each of the "four particular rights" that are required in *Miranda* warnings. *United States v. Crumpton*, 824 F.3d 593, 610-611 (6th Cir. 2016). Thus, the trial court did not err in denying Smith's motion to suppress as to the statements made by Smith to Inv. Brotherwood. For these reasons, Smith's second assignment of error is overruled.

*Conclusion*

**{¶22}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**