[Cite as *State v. Haley*, 2022-Ohio-2188.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,

    CASE NO. 9-22-04

    v.

DEBORAH K. HALEY,

    O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 2020 CR 266

Judgment Affirmed

Date of Decision:  June 27, 2022

APPEARANCES:

    *Nathan Heiser* **for Appellant**

    *Olivia R. Rancour* **for Appellee**

Case No. 9-22-04

**WILLAMOWSKI, J.**

{¶1} The State of Ohio ("State") appeals the judgment of the Marion County Court of Common Pleas, arguing that the trial court erred in granting defendant-appellee Deborah K. Haley's ("Haley") motion to suppress. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On November 17, 2019, Patrolman Sebastian Walker ("Patrolman Walker") of the Marion Police Department was in his cruiser when he observed a vehicle driving on the roadway with a broken taillight. Tr. 7. At roughly 4:10 A.M., Patrolman Walker initiated a traffic stop of this vehicle. Tr. 23. Ex. 1. He later testified that the broken taillight was the only reason that he stopped the vehicle. Tr. 8. Haley was the driver of this vehicle and had a passenger with her in the car. Tr. 22.

{¶3} Patrolman Walker obtained identification from the occupants of the vehicle and returned to his cruiser to verify their information in the police system. Tr. 9, 17. He found no outstanding warrants for the occupants of the vehicle and uncovered no issues with Haley's driver's license. Tr. 17. However, he discovered a record from 2018 ("the 2018 Record") that indicated that the passenger had previously been involved with illegal drugs in some form.[1] Tr. 9. Patrolman Walker

---

[1] Patrolman Walker did not testify about any of the details of this 2018 Record or otherwise indicate he was aware whether this 2018 Record documented an activity, offense, charge, or conviction of the passenger.

-2-

affirmed that, other than the passenger's history of drug use, there were "no other criminal indicators" for the passenger or for Haley. Tr. 22.

{¶4} At this point, Patrolman Walker called for a canine unit to come to the location of the stop. Tr. 12, 23. After the requested unit arrived, the canine alerted at Haley's vehicle. Tr. 12. Patrolman Walker testified that he, his lieutenant who had arrived on the scene, Haley, and the passenger were standing outside of the vehicle at the time the canine alerted. Tr. 26. The police then searched the vehicle and located "methamphetamine inside of a pink billfold inside of a purse." Tr. 12. After the search was completed, Patrolman Walker filled out and issued a citation for the broken taillight. Tr. 31-32. He later testified that he did not work on the citation while awaiting the arrival of the canine unit. Tr. 31-32. Rather, Patrolman Walker stated that he was monitoring Haley and the passenger during this timeframe. Tr. 27.

{¶5} On July 8, 2020, Haley was charged on one count of possession of drugs in violation of R.C. 2925.11(A). Doc. 1. On November 15, 2021, Haley filed a motion to suppress, arguing that the police did not have a legal justification to prolong her detention to allow for a canine unit to arrive at the scene. Doc. 21. After a hearing on December 21, 2021, the trial court granted the motion to suppress. Doc. 33. The trial court found that the police did not have a reasonable articulable

---

Thus, there is no indication that Patrolman Walker was aware of the nature or seriousness of the passenger's prior conduct at the time he called for a canine unit.

suspicion that could serve as a basis for extending the stop to accommodate the arrival of the canine unit.  Doc. 33.

*Assignment of Error*

{¶6} The State of Ohio filed its notice of appeal on January 21, 2022.  On appeal, the State raises the following assignment of error:

**The trial court erred in granting defendant-appellee's motion to suppress evidence based upon the premise that the traffic stop had been impermissibly extended.**

In particular, the State argues that the trial court erred in concluding that "law enforcement cannot extend a traffic stop for a canine to arrive by stopping work on the reasons for the initial stop."  Doc. 33.

*Legal Standard*

{¶7} The Fourth Amendment to the United States Constitution protects citizens "against unreasonable searches and seizures * * *."  Fourth Amendment, United States Constitution.  "The Ohio Constitution offers a parallel provision to the Fourth Amendment of the Federal Constitution that has been held to afford the same level of protection as the United States Constitution." *State v. Powell*, 3d Dist. Auglaize No. 2-21-20, 2022-Ohio-882, ¶ 8, citing Article I, Section 14, Ohio Constitution; *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11.

{¶8} "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v.*

*Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), citing *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, "[t]he touchstone of the Fourth Amendment is reasonableness." *Jimeno* at 250. "[A] police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment." *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 13, citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A traffic "stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. U.S.*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

> **[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.**

*Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

> **Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' *Caballes*, 543 U.S., at 408, 125 S.Ct. 834. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.**

*Rodriguez v. U.S.*, 575 U.S. 348, 355, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).

> **[A] canine sniff, because it is "a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing,'" '[l]ack[s] the same close connection to roadway safety as the ordinary inquiries' and is thus 'not fairly characterized as part of [a law enforcement] officer's traffic mission.'**

*State v. Lawler*, 2020-Ohio-849, 152 N.E.3d 962, ¶ 14 (3d Dist.), quoting *Rodriguez* at 355-356, quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 40-41, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).

{¶9} "[T]he exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Blatchford*, 2016-Ohio-8456, 79 N.E.3d 97, ¶ 28, quoting *State v. Rusnak*, 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist. 1997).

> **Consequently, a law enforcement officer may conduct a canine sniff of a vehicle without reasonable suspicion of additional illegal activity, provided that 'the officer conducts [the] canine sniff of the vehicle before the reasonable completion of the traffic stop procedures * * *.'**

*Lawler* at ¶ 15, quoting *State v. Elliott*, 7th Dist. Mahoning No. 11 MA 182, 2012-Ohio-3350, ¶ 23. "If the dog alerts to a drug odor on the outside of the vehicle, the police then have probable cause to search the interior for contraband." *State v. Harris*, 12th Dist. Butler No. CA2007-04-089, 2008-Ohio-3380, ¶ 16.

{¶10} But because a canine sniff lacks a close connection to the routine traffic stop or highway safety procedures, "a traffic stop *may* become unconstitutionally prolonged in violation of the motorist's Fourth Amendment rights when the motorist is detained because of the request for a dog search." (Emphasis sic.) *State v. Balanik*, 2016-Ohio-3511, 67 N.E.3d 72, ¶ 12 (11th Dist.). "The officer must have a reasonable suspicion that a vehicle contains drugs to

permissibly detain the occupants to await the arrival of a drug-sniffing canine." *Id*.

*See Lawler* at ¶ 16.

> **"The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'"** *State v. Shaffer*, **2013-Ohio-3581, 4 N.E.3d 400, ¶ 18 (3d Dist.), quoting** *State v. Bobo*, **37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting** *Terry v. Ohio*, **392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."** *Kerr*, *supra*, **at ¶ 15, quoting** *State v. Jones*, **70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist. 1990).**

(Bracketed text sic.) *State v. Smith*, 2018-Ohio-1444, 110 N.E.3d 944, ¶ 9 (3d Dist.).

In this inquiry, "[t]he critical question * * * is not whether the dog sniff occurs before or after the officer issues a ticket * * *, but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop' * * *." *Rodriguez, supra*, at 357. In making this determination, courts must examine "the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Hill*, 2d Dist. Montgomery No. 26345, 2016-Ohio-3087, ¶ 9, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

{¶11} "To deter Fourth Amendment violations, the Supreme Court of the United States has adopted an exclusionary rule under which 'any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant.'" *Kerr, supra*, at ¶ 17, quoting *State v. Steinbrunner*, 3d Dist.

Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12.  "Thus, the appropriate remedy for a Fourth Amendment violation is generally the suppression of any illegally obtained evidence."  *State v. Harpel*, 3d Dist. Hardin No. 6-10-03, 2020-Ohio-4513, ¶ 15, citing *State v. O'Neal*, 3d Dist. Allen No. 1-07-33, 2008-Ohio-512, ¶ 19.

{¶12} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact."  *Powell, supra*, at ¶ 12, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> **At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. [Burnside at ¶ 8].  *See also State v. Carter*, 72 Ohio St.3d 545, 552[, 1995-Ohio-104, 651 N.E.2d 965] (1995).  When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence.  *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19[, 437 N.E.2d 583] (1982).  With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. [*Burnside* at ¶ 8], citing *State v. McNamara*, 124 Ohio App.3d 706, 710[, 707 N.E.2d 539] (4th Dist. 1997).**

(Brackets sic.)  *State v. Angers*, 3d Dist. Auglaize No. 2-21-04, 2021-Ohio-3640, ¶ 13, quoting *State v. Sidney*, 3d Dist. Allen No. 1-19-32, 2019-Ohio-5169, ¶ 8.

*Legal Analysis*

{¶13} In this case, Patrolman Walker initiated a traffic stop of Haley's vehicle solely because he observed her driving with a broken taillight.  Tr. 8, 16-17. While Haley and the passenger were detained, Patrolman Walker obtained their identification and ran their information through the police computer system.  Tr. 9.

After Patrolman Walker discovered the 2018 Record, he called for a canine unit to come to the scene of the traffic stop. Tr. 9, 12, 18.

{¶14} At the suppression hearing, Patrolman Walker indicated that, from the time that he called for the canine unit to the time that the dog alerted at the vehicle, he did not work on a citation or issue a warning to Haley for her broken taillight. Tr. 27. He further affirmed that he was not "doing anything in furtherance of the original reason that [he] * * * stopped the car * * * other than monitoring the occupants of the vehicle." Tr. 27. Patrolman Walker then stated that he did not fill out the citation for the broken taillight until after the dog had alerted and the police had searched the vehicle. Tr. 31-32.

{¶15} Patrolman Walker's testimony indicates that he stopped all of the activities that are associated with a routine traffic stop after he called for the canine unit. Tr. 10, 27. By delaying the process of writing and issuing a citation, Patrolman Walker unnecessarily extended the duration of this stop and prolonged Haley's detention. *See State v. Neal*, 10th Dist. Franklin No. 15AP-771, 2016-Ohio-1406, ¶ 23 (examining whether "normal procedures were delayed for reasons unrelated to the investigation of the traffic violation * * *"). Since he was in no way acting to further the original reason for this traffic stop, Patrolman Walker needed to have a reasonable articulable suspicion of some criminal activity to justify prolonging Haley's detention for the purpose of accommodating the arrival of a canine unit in this manner. *State v. Ramos*, 155 Ohio App.3d 395, 2003-Ohio-6535, 801 N.E.3d

523, ¶ 13 (2d Dist.); *State v. Eggleston*, 2015-Ohio-958, 29 N.E.3d 23, ¶ 28 (11th Dist.).

{¶16} However, at the suppression hearing, the only basis that Patrolman Walker offered for prolonging this detention was the passenger's 2018 Record. Tr. 10, 18. He affirmed that, "aside from the 2018 history, there's no other criminal indicators for the passenger[.]" Tr. 22. Patrolman Walker also affirmed that "[t]here were no criminal indicators whatsoever for the driver, Miss Haley[.]" Tr. 22. He stated that both Haley and the passenger cooperated with his instructions and provided him with identification upon request. Tr. 17. He also found no indication in the computer system that either of them had an outstanding warrant or that Haley had any issue with her driver's license. Tr. 17.

{¶17} Having examined the evidence in the record, we conclude that Patrolman Walker did not have a reasonable articulable suspicion to prolong Haley's detention to await the arrival of the canine unit. Nothing in the record suggests that the passenger had any significant history of drug activity that would lead to a reasonable articulable suspicion that illegal activity was occurring at the time of the traffic stop in this case. *See State v. Stevens*, 4th Dist. Washington No. 15CA30, 2016-Ohio-5017, ¶ 36; *State v. Green*, 2016-Ohio-4810, 69 N.E.3d 59, ¶ 22 (7th Dist.).

{¶18} In the absence of a reasonable articulable suspicion of criminal activity, the police impermissibly prolonged Haley's detention to accommodate the

-10-

arrival of the canine unit. *State v. Hall*, 2017-Ohio-2682, 90 N.E.3d 276, ¶ 13 (2d Dist.) (affirming a trial court's decision to grant a motion to suppress where the police did "nothing for eight minutes while awaiting a canine unit"). Accordingly, we conclude that the trial court did not err in granting Haley's motion to suppress. The State of Ohio's sole assignment of error is overruled.

*Conclusion*

{¶19} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/hls**