[Cite as *State v. Weber*, 2019-Ohio-916.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-06-040 |
| Appellee, | : | O P I N I O N<br>3/18/2019 |
| | : | |
| - vs - | : | |
| | : | |
| FREDRICK M. WEBER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2018CRB00659

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, OH 45103, for appellee

Gary A. Rosenhoffer, 313 E. Main Street, Batavia, OH 45103, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Fredrick Weber, appeals his conviction in the Clermont County Municipal Court for using weapons while intoxicated.

{¶ 2} Around 4:00 a.m. on February 17, 2018, a deputy and a sergeant from the Clermont County Sheriff's Office were dispatched to appellant's home following the 9-1-1 call of his wife reporting that appellant was in possession of a firearm and intoxicated. When

the officers arrived at the scene, appellant's wife advised them that everything was alright as appellant had put the firearm away. The deputy asked her if they could enter the home and she escorted them inside. Once inside, the officers observed appellant coming out of a doorway, holding a shotgun by the stock with the barrel pointed down. Appellant told the officers that the shotgun was unloaded and that he was unloading it to wipe it down. The officers took possession of the shotgun and confirmed it was unloaded. The officers did not observe any ammunition for the shotgun.

{¶ 3} While interacting with appellant, the deputy detected the odor of an alcoholic beverage on appellant's person. Appellant's eyes were bloodshot and glassy, his speech was slurred, and he was unsteady on his feet. Appellant was unable to complete a field sobriety test because he could not follow directions. Furthermore, he was swaying while standing in the instruction position. Appellant stated several times that he was drunk. The officers described appellant as "very intoxicated," "very impaired," and "highly intoxicated."

{¶ 4} Appellant was charged by complaint with one count of using weapons while intoxicated in violation of R.C. 2923.15, a misdemeanor of the first degree. The matter proceeded to a bench trial. Appellant did not testify or present witnesses on his behalf. At trial, defense counsel stipulated that the shotgun satisfied the statutory definition of a firearm and that it was operable.

{¶ 5} Following the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29, arguing that mere possession of a firearm is not illegal and that Ohio citizens have the right to arm themselves. Appellant further argued that R.C. 2923.15 was unconstitutional as applied. The trial court took the matter under advisement. In a post-trial memorandum, appellant once again argued that the statute was unconstitutional as applied. By decision filed on June 5, 2018, the trial court rejected appellant's constitutional challenge to R.C. 2923.15 and found appellant guilty as charged.

- 2 -

{¶ 6} Appellant now appeals, raising two assignments of error which will be considered together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE GUILTY FINDING IS CONTRARY TO LAW.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE USING A WEAPON WHILE INTOXICATED STATUTE IS UNCONSTITUTIONAL AS APPLIED TO THE FACTS OF THIS CASE.

{¶ 11} Appellant challenges his conviction on two separate grounds. Specifically, appellant challenges his conviction on the ground the state failed to prove he was carrying or using a firearm because "the record is devoid of any evidence that the unloaded shotgun [appellant] was holding was carried or used as a firearm" or that he "had committed, was committing or was about to commit" any "crime while holding the shotgun." Appellant further challenges his conviction on the ground R.C. 2923.15 is unconstitutional on its face and as applied because it infringes upon his right to keep and bear arms and defend himself.

{¶ 12} Appellant was convicted of violating R.C. 2923.15(A) which provides, "No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance." Whoever violates the statute is "guilty of using weapons while intoxicated[.]" R.C. 2923.15(B). "'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B).

{¶ 13} "[T]he word 'intoxicated' as used in R.C. 2923.15(B) means the state of being 'under the influence' [as used] in R.C. 2923.15(A)." *State v. Smith*, 9th Dist. Wayne No. 1610, 1979 Ohio App. LEXIS 11527, *2-3 (Dec. 12, 1979). "Under the influence" has been defined as the condition in which a person finds himself after having consumed some

intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that its effect on the person adversely affects his actions, reactions, conduct, movements or mental processes or impairs his reactions to an appreciable degree, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess. *State v. Eldridge*, 12th Dist. Warren No. CA2015-02-013, 2015-Ohio-3524, ¶ 7.

{¶ 14} R.C. 2923.15 regulates the carrying or use of a firearm while intoxicated and simply prohibits an individual from using or carrying, i.e. handling, any firearm while under the influence of alcohol or any drug of abuse, as defined above. *Smith* at *2; *State v. Waterhouse*, 7th Dist. Belmont No. 93-B-26, 1995 Ohio App. LEXIS 578, *4 (Feb. 16, 1995). Contrary to appellant's assertion, the statute does not require that the firearm be used as a firearm or that it be carried or used with the intent to use it as a weapon or firearm. Nor does the statute require the state to prove that the intoxicated person had committed, was committing, or was about to commit a crime while handling the firearm. Furthermore, R.C. 2923.15 does not, as suggested by appellant, criminalize the mere presence of a firearm in the home of an intoxicated person. Nor does the statute, as suggested by appellant, prohibit a person from carrying or using a firearm after consuming alcoholic beverages. Rather, the statute only prohibits the use or carrying of a firearm by a person who has imbibed to the point of intoxication.

{¶ 15} At trial, the state presented evidence that appellant was holding the shotgun while he was "very impaired," "very intoxicated," and "highly intoxicated." Appellant's eyes were bloodshot and glassy, his speech was slurred, he was unsteady on his feet, and an odor of an alcoholic beverage was detected on his person. Appellant himself told the officers several times that he was drunk. Appellant further stipulated at trial that the shotgun satisfied the statutory definition of a firearm and that it was operable. "Once entered into

by the parties and accepted by the court, a stipulation is binding upon the parties as 'a fact deemed adjudicated for purposes of determining the remaining issues in the case.'" *Bodrock v. Bodrock*, 8th Dist. Cuyahoga No. 104177, 2016-Ohio-5852, ¶ 19, quoting *Dejoseph v. Dejoseph*, 7th Dist. Mahoning No. 10 MA 156, 2011-Ohio-3173, ¶ 35. Thus, the state presented evidence that appellant carried a firearm while under the influence of alcohol. The record amply supports appellant's conviction under R.C. 2923.15.

{¶ 16} Appellant further challenges his conviction on the ground R.C. 2923.15 is unconstitutional on its face and as applied because it infringes upon his right to keep and bear arms and defend himself pursuant to the Second Amendment to the United States Constitution, the United States Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), Article I, Section 4 of the Ohio Constitution, R.C. 9.68(A), and the Ohio Castle Doctrine ("castle doctrine").

{¶ 17} Statutes enacted by the Ohio legislature enjoy a strong presumption of constitutionality. *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 7. The party challenging the constitutionality of a statute must prove that it is unconstitutional beyond a reasonable doubt. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 39 (1993).

{¶ 18} A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17. In a facial challenge, the challenging party must demonstrate that there is no set of facts under which the statute would be valid, that is, the statute is unconstitutional in all of its applications. *Romage* at ¶ 7. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37. A facial challenge permits a statute to be attacked for its effect on conduct other than the conduct for which the defendant is charged. *State v. White*, 6th Dist. Lucas No. L-10-1194, 2013-Ohio-51, ¶ 151.

{¶ 19} In an as-applied challenge, the challenging party "bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statut[e] unconstitutional and void when applied to those facts." *Collier* at ¶ 38. The challenging party contends that the application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St. 3d 106, 2004-Ohio-357, ¶ 14. The practical effect of holding a statute unconstitutional as applied is to prevent its future application in a similar context, but not to render it utterly inoperative. *Id.*

{¶ 20} We note that appellant seemingly argues that R.C. 2923.15 is unconstitutional as applied under the castle doctrine because it forces him, and those similarly situated, to choose between the constitutional right to keep arms in his house and the right to defend his family and person under the doctrine. However, appellant did not engage in any such activity. "A person to whom a statute may be constitutionally applied may not be heard to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court." *State v. Taubman*, 78 Ohio App.3d 834, 845 (2d Dist.1992), citing *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908 (1973). "[I]f there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional * * * in hypothetical situations." *State v. Jones*, 12th Dist. Clermont No. CA94-11-094, 1995 Ohio App. LEXIS 2555, *10 (June 19, 1995).

{¶ 21} The right to keep and bear arms is a fundamental right enshrined in federal and state constitutional law. *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 11. In *Heller*, the United States Supreme Court held that the Second Amendment to the United States Constitution confers an individual right to keep and bear arms, and that its "core protection" is "the right of law-abiding, responsible citizens to use

arms in defense of hearth and home." *Heller*, 554 U.S. at 595, 634-635. *See also McDonald v. Chicago*, 561 U.S. 742, 750, 130 S.Ct. 3020 (2010) (extending the Second Amendment right to keep and bear arms to the states under the Fourteenth Amendment's Due Process Clause).

**{¶ 22}** The Supreme Court however emphasized that this right is subject to certain longstanding limitations:

> Like most rights, *the right secured by the Second Amendment is not unlimited.* From Blackstone through the 19th-century cases, commentators and courts routinely explained that the *right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.* * * * Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

(Emphasis added.) *Heller* at 626-27. The court additionally cautioned that "these presumptively lawful regulatory measures [serve] only as examples; our list does not purport to be exhaustive." *Id.* at 627, fn. 26.

**{¶ 23}** Although the Supreme Court did not set forth the appropriate level of scrutiny to be applied to restrictions to bear arms under the Second Amendment, it did reject the rational-basis test as well as an "interest-balancing" standard as inappropriate. *Heller*, 554 U.S. at 628, fn. 27, 634-635. Following *Heller*, many courts have applied an intermediate level of scrutiny. *See State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268; *State v. Campbell*, 1st Dist. Hamilton No. C-120871, 2013-Ohio-5612; *State v. Wheatley*, 4th Dist. Hocking No. 17CA3, 2018-Ohio-464.

**{¶ 24}** Under the intermediate scrutiny standard, the legislation must (1) be narrowly tailored to serve a significant government interest, and (2) leave open alternative means of

exercising the right. *Henderson* at ¶ 52, citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948 (1983). "A weapons-statute ordinarily will survive an intermediate-scrutiny analysis if the statute is reasonably related to a significant, substantial, or important governmental interest." *Wheatley* at ¶ 17. "Intermediate scrutiny does not demand that the challenged law 'be the least intrusive means of achieving the relevant governmental objective, or that there be no burden whatsoever on the individual right in question.'" *Id.*, quoting *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir.2011).

{¶ 25} The Ohio Supreme Court has similarly held that Article I, Section 4 of the Ohio Constitution confers an individual right to keep and bear arms "for defense of self and property." *Arnold*, 67 Ohio St.3d at 43. However, "this right is not absolute" and may be limited in furtherance of valid public safety interests. *Id.* at 45-46. The right to keep arms is "subject to reasonable regulation" which, under the state's police powers, must "bear a real and substantial relation" to secure "the health, safety, morals, or general welfare of the public." *Id.* at 46-47. The supreme court continued,

> Any form of gun control legislation is destined to attract much attention. That does not change the fact that there must be some limitation on the right to bear arms to maintain an orderly and safe society while, at the same time, moderating restrictions on the right so as to allow for practical availability of certain firearms for purposes of hunting, recreational use and protection.

*Id.* at 48. Accordingly, "the recognized state right to bear arms is subject to reasonable regulation which advances the health, safety, morals, or general welfare of the public." *Peoples Rights Org., Inc. v. Montgomery*, 142 Ohio App.3d 443, 501 (12th Dist.2001).

{¶ 26} "If the challenged legislation impinges upon a fundamental constitutional right, courts must review the statut[e] under the strict-scrutiny standard." *Collier*, 2005-Ohio-5334 at ¶ 39; *State v. Emery*, 12th Dist. Clermont No. CA2014-09-062, 2015-Ohio-1487, ¶ 13.

*See also State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956; *State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252. "Under the strict-scrutiny standard, a statute that infringes on a fundamental right is unconstitutional unless the statute is narrowly tailored to promote a compelling governmental interest." *Collier* at ¶ 39, citing *Chavez v. Martinez*, 538 U.S. 760, 123 S.Ct. 1994 (2003).

{¶ 27} We find that R.C. 2923.15 does not violate the right to keep and bear arms set forth in the Ohio or federal Constitutions either on its face or as applied to appellant. R.C. 2923.15 is narrowly tailored to serve the significant government interest of guarding public safety and leaves open alternate means of exercising the fundamental right to bear arms.

{¶ 28} R.C. 2923.15 prohibits the use or carrying of any firearm by a person while he or she is under the influence of alcohol or drugs of abuse. Thus, the statute does not prohibit the use or carrying of any firearms, but simply regulates the manner in which they are handled. "[F]irearm controls are within the ambit of the police power." *Arnold*, 67 Ohio St.3d at 47. "In enacting R.C. 2923.15, the General Assembly has, in the reasonable exercise of its police powers, determined that in Ohio an intoxicated individual should not be permitted to handle a firearm." *Waterhouse*, 1995 Ohio App. LEXIS 578 at *4.

{¶ 29} The state possesses a strong compelling interest in maintaining public safety and preventing gun violence. R.C. 2923.15 seeks to prevent injury or death resulting from the discharge of a firearm by prohibiting intoxicated individuals from using or carrying a firearm, thereby restricting firearm handling by those individuals in situations wherein substantial harm to the public's safety and welfare will likely result. R.C. 2923.15 manifests the General Assembly's recognition that firearms in the hands of intoxicated individuals creates a circumstance where substantial harm could result to the public and seeks to prevent gun violence and preserve public safety.

{¶ 30} Our reasoning is supported by the Committee Comment to H.B. 511, which codified RC 2923.15, which provides that "[t]he rationale for the offense is that carrying or using firearms or dangerous ordnance without having complete control of one's faculties presents a danger as great as driving while intoxicated." "[T]he section is also designed as a tool to permit law enforcement officers to step in and prevent the commission of more serious crimes, as well as tragic accidents." *Id.*

{¶ 31} Applying a similar analysis, the Seventh Appellate District upheld the constitutionality of R.C. 2923.15 under the Ohio Constitution. Upon noting that "the right granted by Article I, Section 4 of the Ohio Constitution is not absolute and that the State, in the reasonable exercise of its police power, may impose reasonable control over that right in order to promote the safety and welfare of its citizens," the appellate court found that R.C. 2923.15 was "designed to guard against such tragedies such as [the accidental discharge of a firearm by an intoxicated person resulting in the death of a friend]." *Waterhouse*, 1995 Ohio App. LEXIS 578 at *4-5. "As such, it bears a real and substantial relation to a legitimate government objective and is not overbroad. The danger to innocent persons is the same whether the intoxicated person is inside his home or in a public place." *Id.* at *5.

{¶ 32} Accordingly, we find that the statutory limitation imposed upon an individual's right to use or carry a firearm while under the influence of alcohol or drugs of abuse is appropriate, reasonable, and narrowly tailored to a legitimate compelling government interest in safety – the safety of the individual handling the firearm, the safety of nearby persons, and the safety of police officers who encounter the intoxicated individual. The Second Amendment right "is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 571. Similarly, "the people of our nation, and this state, cannot have unfettered discretion to do as we please at all times. Neither the federal Bill of Rights nor this state's Bill of Rights, implicitly or

explicitly, guarantees unlimited rights." *Arnold*, 67 Ohio St.3d at 44.

{¶ 33} We further find that R.C. 2923.15 leaves open alternate means of exercising the fundamental right to bear arms. Specifically, the limitation on the right to carry or use the firearm is only temporary and only exists during the time in which the person is intoxicated. Thus, the firearm proscription ends once the disability is over, such as when the person sobers up before handling the firearm. Similarly, the firearm proscription never applies when the disability is avoided, such as when the person does not drink to the point of intoxication.

{¶ 34} Our reasoning is supported by federal court decisions that have roundly rejected Second Amendment challenges to a federal statute that prohibits habitual drug users from possessing firearms. In upholding the federal statute, the United States Court of Appeals for the Seventh Circuit observed that

> unlike those who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user like Yancey could regain his right to possess a firearm simply by ending his drug abuse. In that sense, the restriction in [the statute] is far less onerous than those affecting felons and the mentally ill. * * * The prohibition in [the statute] bars only those persons who are *current* drug users from possessing a firearm[.]

(Emphasis sic.) *United States v. Yancey*, 621 F.3d 681, 686-687 (7th Cir.2010). The court continued, "Thus the gun ban extends only so long as Yancey abuses drugs. In that way, Yancey himself controls his right to possess a gun; the Second Amendment, however, does not require Congress to allow him to simultaneously choose both gun possession and drug abuse." *Id.* at 687. *See also United States v. Dugan*, 657 F.3d 998 (9th Cir.2011).

{¶ 35} In considering the same federal statute, the United States Court of Appeals for the Fourth Circuit similarly observed that the statute "does not permanently disarm all persons who, at any point in their lives, were unlawful drug users or addicts. Instead, it only

applies to persons who are *currently* unlawful users or addicts." *United States v. Carter*, 669 F.3d 411, 419 (4th Cir.2012). "By initially disarming unlawful drug users and addicts while subsequently restoring their rights when they cease abusing drugs, Congress tailored the prohibition to cover only the time period during which it deemed such persons to be dangerous." *Id.* "[The statute] enables a drug user who places a high value on the right to bear arms to regain that right by parting ways with illicit drug use." *Id.* The same logic applies to the constitutionality of R.C. 2913.15.

{¶ 36} We therefore find that appellant has failed to show beyond a reasonable doubt that R.C. 2923.15 is unconstitutional on its face or as applied to him under either the Ohio or federal Constitutions. *See also State v. Beyer*, 5th Dist. Licking No. 12-CA-27, 2012-Ohio-4578 (finding that Beyer's conviction of using a weapon while intoxicated under R.C. 2923.15 did not violate his Second Amendment right as applied to him because the prohibition of using a weapon while intoxicated, even within the confines of one's private residence, fell within the limitations of the Second Amendment).

{¶ 37} We next address appellant's argument that R.C. 2923.15 is in conflict with the public policy declaration in R.C. 9.68.

{¶ 38} R.C. 9.68(A) provides that

> The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. *Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm*, part of a firearm, its components, and its ammunition.

(Emphasis added.)

- 12 -

**{¶ 39}** R.C. 9.68 was enacted to address the "need to provide uniform laws throughout the state" regulating ownership and possession of firearms and "the General Assembly's concern that absent a uniform law throughout the state, law abiding gun owners would face a confusing patchwork of licensing requirements, possession restrictions, and criminal penalties as they travel from one jurisdiction to another." *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, ¶ 2, 35. But R.C. 9.68 does more than merely state the need for uniformity. *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, ¶ 20. While recognizing the right to keep and bear arms as a "fundamental individual right" and "a constitutionally protected right in every part of Ohio," the statute plainly allows the state to regulate certain aspects of firearm ownership, transfer, possession, transporting, or use by providing that a person may own, possess, or keep any firearm "[e]xcept as specifically provided by * * * state law, or federal law[.]" "Simply put, the General Assembly, by enacting R.C. 9.68(A), gave persons in Ohio the right to carry a handgun unless federal or state law prohibits them from doing so." *Clyde* at ¶ 20. Thus, pursuant to R.C. 9.68, "federal or state regulations can limit an Ohioan's individual right to bear arms." *Cleveland* at ¶ 1. R.C. 2923.15 is such a state law. R.C. 9.68, therefore, affords no protection to appellant from conviction for carrying a shotgun while intoxicated.

**{¶ 40}** Finally, we address appellant's argument that R.C. 2923.15 is in conflict with the castle doctrine. Appellant asserts that under R.C. 2923.15, an intoxicated person, while in his home, would never be able to use a firearm to defend himself or his family.

**{¶ 41}** R.C. 2901.09(B) "codifies a form of self-defense as the castle doctrine" and states that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence[.]" *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 56. Similarly, R.C. 2901.05(B)(1) provides that a defendant is entitled to a presumption of "self-defense

or defense of another" if the evidence shows that the defendant used defensive force against another person who was "in the process of unlawfully and without privilege to do so entering, or ha[d] unlawfully and without privilege to do so entered" the defendant's residence or vehicle.

{¶ 42} Nothing in R.C. 2923.15 circumscribes the availability of the castle doctrine. The castle doctrine simply creates a presumption that the defendant acted in self-defense when he or she uses deadly force against a person who has entered or is entering the defendant's home or vehicle without privilege to do so. The doctrine remains available to an intoxicated person using defensive force with a firearm in defending himself or another in his residence or vehicle. Whether such would violate R.C. 2923.15 is a different matter and is no different than when a defendant under disability exercises his rights under the castle doctrine. R.C. 2923.15 therefore does not conflict with the castle doctrine.

{¶ 43} In light of the foregoing, we find that appellant's conviction is not contrary to law and that R.C. 2923.15 does not violate the Ohio or federal Constitutions.

{¶ 44} Appellant's two assignments of error are overruled.

{¶ 45} Judgment affirmed.

S. POWELL, P. J., and PIPER, J., concur.