[Cite as *State v. Johnson*, 2019-Ohio-5386.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                        CASE NO.  1-19-47

      v.

AARON R. JOHNSON,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2018 0531

Judgment Affirmed

Date of Decision:   December 30, 2019

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Jana E. Emerick* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Aaron Johnson ("Johnson"), brings this appeal from the July 29, 2019, judgment of the Allen County Common Pleas Court sentencing him to an aggregate 42-month prison term after he plead no contest to, and was convicted of, Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, Possession of a Fentanyl-Related Compound in violation of R.C. 2925.11(A), a felony of the fifth degree, Possession of Cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree, and Possession of Heroin in violation of R.C. 2925.11(A), a felony of the fifth degree. On appeal, Johnson argues that the charge of Having Weapons While Under Disability was unconstitutional under the Second Amendment to the United States Constitution and Article I, Section 4, of the Ohio Constitution, that the trial court should have dismissed the Having Weapons While Under Disability charge because the juvenile adjudication for Burglary leading to the disability was not actually an offense of violence even though the Ohio Revised Code classified it as one, and that the trial court should have suppressed the interrogation of Johnson.

*Background*

{¶2} On February 14, 2019, Johnson was indicted for Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, Possession of a Fentanyl-Related Compound in violation of R.C.

2925.11(A), a felony of the fifth degree, Possession of Cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree, and Possession of Heroin in violation of R.C. 2925.11(A), a felony of the fifth degree. The Having Weapons While Under Disability charge alleged that Johnson knowingly had a firearm when he had been previously adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence, specifically Burglary. Johnson originally pled not guilty to the charges.

{¶3} On March 15, 2019, Johnson filed a motion to dismiss the Having Weapons While Under Disability charge, arguing that it was unconstitutional in violation of the Second Amendment right to bear arms in the United States Constitution, and the corresponding right to bear arms in Article I, Section 4, of the Ohio Constitution. Johnson recognized that in *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, the Supreme Court of Ohio had recently determined that charging a person with Having Weapons While Under Disability under R.C. 2923.13(A)(2) was not an unconstitutional violation of *due process* for using a juvenile adjudication of delinquency for an offense that would be a felony offense of violence if committed by an adult as the predicate disability; however, Johnson noted that in *Carnes* the Supreme Court of Ohio specifically declined to address whether the same charge would violate the Second Amendment because the argument was not raised in the lower courts. *Carnes* at ¶ 20.

{¶4} Here, Johnson challenged the constitutionality of R.C. 2923.13(A)(2) under the Second Amendment where the predicate disability was a delinquency adjudication for commission of an offense that, if committed by an adult, would have been a felony offense of violence. Johnson argued that R.C. 2923.13(A)(2) exceeded the scope of the legislature's authority and placed an unreasonable limitation upon the Second Amendment and Article I, Section 4, of the Ohio Constitution.[1]

{¶5} In addition to his specific constitutional argument, Johnson argued in his motion to dismiss that his prior juvenile adjudication for Burglary, which the legislature categorized as an offense of violence under R.C. 2901.01(A)(9)(a), was improperly deemed an offense of "violence." He argued that a Burglary could be accomplished without violence, and thus it was improper to include it with other violent offenses and prevent Johnson from exercising his right to bear arms as an adult.

{¶6} On March 21, 2019, Johnson also filed a motion to suppress the custodial interrogation conducted of him on December 18, 2018. He argued that a recording of the interrogation demonstrated that there were questions asked to him

---

[1] Johnson attached an amicus brief that had been filed in the *Carnes* case to his motion to dismiss. The amicus brief, written by the Buckeye Firearms Association, contended that though the issue was not raised below in *Carnes*, the Supreme Court of Ohio should address the Second Amendment and that the Supreme Court of Ohio should determine that because a juvenile adjudication is not a "crime" it should not be treated as one. Therefore, the Buckeye Firearms Association contended that since the juvenile had not actually been convicted of a "violent felony," removing his right to bear arms was in violation of the United States Constitution and the Ohio Constitution.

about his drug use before any *Miranda* warnings were given, and that the *Miranda* warnings were inadequate because Johnson was not notified of his right to consult with an attorney.

{¶7} On April 11, 2019, the State filed a response to Johnson's motion to dismiss. The State argued that *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), which Johnson primarily relied upon in his motion to dismiss, specifically states that the rights secured by the Second Amendment were not absolute. The State argued that, according to *Heller*, the core protection of the Second Amendment right was for "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller* at 635, 2821. The State contended that it was reasonable for the Ohio legislature to remove individuals adjudicated as delinquent for crimes that would have been felony offenses of violence if committed by an adult from the class of "law-abiding, responsible citizens."

{¶8} Moreover, the State argued that statutes are given a strong presumption of constitutionality, that this statute was narrowly tailored to meet government interests, *and* that a person such as Johnson was not even permanently prohibited from owning a firearm. Johnson had the ability to apply to have his rights restored under R.C. 2923.14. Finally, the State argued that Johnson's contention that Burglary should not be an "offense of violence" was irrelevant in this matter because the legislature had specifically categorized it as such.

{¶9} On April 26, 2019, the trial court filed an entry denying Johnson's motion to dismiss the Having Weapons While Under Disability charge. The trial court stated that the Second Amendment right was not unlimited and that it was surrendered when an individual engaged in a felony. The trial court found that the Supreme Court of Ohio determined in *Carnes* that a charge such as the one in this case did not violate due process and the trial court saw no reason the holding should not be extended to another constitutional provision.

{¶10} On May 20, 2019, a suppression hearing was held. At the beginning of the hearing, the trial court noted that the State actually never filed a response to Johnson's suppression motion. Nevertheless, the hearing proceeded with the State stipulating that Johnson was in custody at the time of the interrogation. The State also indicated that it did not intend to introduce any statements into evidence at trial that were elicited in the interrogation video prior to *Miranda* warnings. Notwithstanding the State's concession, the State argued that the questions asked prior to the *Miranda* warnings in the interrogation were merely routine booking questions and should have been admissible if the State had chosen to introduce them. In addition, the State argued that the actual *Miranda* warnings given in this case were sufficient, contrary to Johnson's claims. A video of the entire interrogation was introduced into evidence at the suppression hearing.

{¶11} On May 23, 2019, the trial court filed a judgment entry denying Johnson's suppression motion. The trial court determined that before Johnson was admonished pursuant to *Miranda*, Johnson was "merely asked some personal history and background questions." (Doc. No. 36). The trial court reasoned that *Miranda* did not apply to routine booking questions. (*Id.*) citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 32. Further, the trial court found that the officers did not confront Johnson with any of his pre-*Miranda* warning statements, and that the evidence did not show that police actions were coercive, or that police were trying to "bait" him into talking. (*Id.*) citing *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 31.

{¶12} As to the adequacy of the *Miranda* warnings, the trial court found that, contrary to Johnson's claim, the police explained that Johnson did not have to talk to the police without an attorney present and that they could wait until an attorney was present. The trial court stated that Johnson was primarily concerned with the fact that the warnings did not come in Johnson's "preferred language"; however, the trial court determined that a deficiency in the *Miranda* admonishments did not exist here. The trial court further found that there was no indication that Johnson's will was overborne or that there was police coercion in this matter. (Doc. No. 36) citing *State v. Smith*, 3d Dist. Allen No. 1-17-50, 2018-Ohio-1444, ¶¶ 15-22.

{¶13} After the denial of his motion to dismiss and the denial of his suppression motion, Johnson entered into a written negotiated plea agreement. Pursuant to the agreement, Johnson would plead no contest to all four counts in the indictment, and the State would be heard at sentencing. In addition, the agreement also stated that an appellate bond would be granted in the amount of $75,000. The written plea agreement plea was signed by Johnson, his attorney, the State, and the trial court.[2]

{¶14} On July 29, 2019, the case proceeded to sentencing. Johnson was ordered to serve 30 months in prison on the Having Weapons While Under Disability conviction and 12 months in prison on each of the three drug possession crimes. The prison terms for the drug possession crimes were ordered to be served concurrently with each other, but consecutive to the prison term for the Having Weapons While Under Disability charge for an aggregate 42-month prison term. A judgment entry memorializing Johnson's sentence was filed that same day. It is from this judgment that Johnson appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The Trial Court should have dismissed Count I because R.C. §2923.13(A)(2) is unconstitutional, in violation of the United**

---

[2] The record indicates that a change-of-plea hearing was held June 17, 2019; however, no transcript of that hearing was produced. An entry filed by the trial court on June 18, 2019, stated that a Criminal Rule 11 dialogue occurred at the hearing, that it was determined Johnson entered his no contest pleas knowingly, intelligently, and voluntarily, and that the pleas were accepted. Johnson was convicted of all four charges at that time.

**States Constitution (the Second and Fourteenth Amendments thereto) and Article I, Section 4, of the Ohio Constitution.**

**Assignment of Error No. 2**
**The Trial Court should have dismissed Count I because the offense for which Mr. Johnson was adjudicated delinquent does not even create a disability statutorily.**

**Assignment of Error No. 3**
**The Trial Court should have suppressed the interrogation of the Defendant conducted December 18, 2018, because the custodial interrogation started with intentionally-elicited inculpatory answers as to Mr. Johnson's drug use, with the inducing questions presented to Mr. Johnson before Miranda warnings.**

**Assignment of Error No. 4**
**The Trial Court should have suppressed the interrogation of the Defendant conducted December 18, 2018, because the warnings provided were inadequate.**

*First Assignment of Error*

{¶15} In Johnson's first assignment of error, he argues that the trial court erred by overruling his motion to dismiss the Having Weapons While Under Disability charge against him. Specifically, he argues that the charge, predicated on a juvenile adjudication of delinquency for Burglary, was unconstitutional under the constitutions of the United States and Ohio.

Law Governing Constitutional Challenges to Statutes

{¶16} Statutes enacted by the General Assembly are entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 7; R.C. 1.47. "[I]f at all possible, statutes must be construed in

conformity with the Ohio and United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269 (1991).

{¶17} In order to find a statute unconstitutional, we must determine beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. *State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, ¶ 10. " '[D]oubts regarding the validity of a legislative enactment are to be resolved in favor of the statute.' " *Id*. quoting *State v. Smith*, 80 Ohio St.3d 89, 99-100 (1997), citing *State v. Gill*, 63 Ohio St.3d 53, 55 (1992).

{¶18} A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17. "Facial challenges present a higher hurdle than as-applied challenges because, in general, for a statute to be facially unconstitutional, it must be unconstitutional in all applications." *Romage*, at ¶ 7. Under a facial challenge, it must be shown that there is no set of facts under which the statute would be valid. *Id*.

{¶19} In an as-applied challenge, the challenger " 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.' " *Lowe* at ¶ 17, quoting *Ada v. Guam Soc. Of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633 (1992) (Scalia, J., dissenting). The practical impact of holding that a statute is unconstitutional as

applied to the challenger is to prevent its future application in a similar context, " 'but not to render it utterly inoperative.' " *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, quoting *Ada*, 506 U.S. 1011 (Scalia, J. dissenting). "[W]here statutes are challenged on the ground that they are unconstitutional as applied to a particular set of facts, the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 38 (2005).

Standard of Scrutiny

{¶20} The Supreme Court of the United States did not establish the appropriate level of scrutiny to be applied to restrictions to the right to bear arms under the Second Amendment in *Heller*; however, the Supreme Court did reject the rational-basis test as well as an "interest-balancing" standard, finding that both were not appropriate.

{¶21} Since the *Heller* decision, a number of Ohio Appellate Courts have applied an intermediate level of scrutiny to Second Amendment challenges. *See State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268; *State v. Campbell*, 1st Dist. Hamilton No. C-120871, 2013-Ohio-5612; *State v. Wheatley*, 4th Dist. Hocking No. 17CA3, 2018-Ohio-464; *State v. Glover*, 9th Dist. Summit No. 27307, 2015-Ohio-2751, ¶¶ 5-6; *State v. Rush*, 2d Dist. Montgomery No. 25179,

2012-Ohio-5919 (noting that *Heller* did not expressly prescribe a strict scrutiny standard). Some federal courts have also applied an intermediate scrutiny standard. *See Kachalsky v. Cty. Of Westchester*, 701 F.3d 81, 93-94 (2d Cir.2012); *United States v. Reese*, 627 F.3d 792, 01-802 (10th Cir.2010); *Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678, 699 (6th Cir.2016).

{¶22} "In applying the intermediate scrutiny standard to legislation that regulates the Second Amendment, such legislation (1) must be narrowly tailored to serve a significant government interest, and further, it (2) must leave open alternative means of exercising the right." *State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶ 52, citing *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. (1983). Notably, "Intermediate scrutiny does not demand that the challenged law 'be the least intrusive means of achieving the relevant governmental objective, or that there be no burden whatsoever on the individual right in question.' " *Wheatley*, *supra*, at ¶ 17, citing *United States Masciandaro*, 638 F.3d 458, 474 (4th Cir.2011).[3]

---

[3] Were we not to apply "intermediate scrutiny" in this matter as numerous other courts have, we note that some federal courts have applied a two-part test when determining legislation with regard to the Second Amendment. In that two-part test, "First, the court must consider whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment guarantee. If it does, the court must evaluate the law under 'some form of means-end scrutiny.' " *State v. Campbell*, 1st Dist. Hamilton No. C-120871, 2013-Ohio-5612, ¶ 11, citing *Drake v. Filko,* 724 F.3d 426, 429 (3d Cir.2013); *United States v. Greeno,* 679 F.3d 510, 518 (6th Cir.2012); *Reese* at 800–801; *U.S. v. Marzzarella,* 614 F.3d 85, 89 (3d Cir.2010). We note that our decision in this case would be the same under a means-end scrutiny, or strict scrutiny for that matter.

Analysis

**{¶23}** The right to keep and bear arms is a fundamental right enshrined in federal and state constitutional law. *State v. Weber*, 12th Dist. Clermont No. CA2018-06-040, 2019-Ohio-916, ¶ 21. The Second Amendment to the United States Constitution reads, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Ohio Constitution reads, "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power." Ohio Constitution Article I, Section 4.

**{¶24}** In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the Supreme Court of the United States held that the Second Amendment to the United States Constitution confers an individual right to keep and bear arms, and that its "core protection" is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller* at 635. Then, *McDonald v. Chicago*, 561 U.S. 742, 750, 130 S.Ct. 3020 (2010), extended the Second Amendment right to keep and bear arms to the states under the Fourteenth Amendment's Due Process Clause. Separately, under our own constitution, the Supreme Court of Ohio has similarly held that Article I, Section 4 of the Ohio Constitution confers upon

Ohioans the fundamental, individual right to bear arms for defense and security.  *See*

*Arnold v. Cleveland*, 67 Ohio St.3d 35 (1993).

{¶25} Nevertheless, despite these pronouncements, both the United States

Supreme Court in *Heller*, and the Supreme Court of Ohio in *Arnold*, recognized that

the right to bear arms is *not* absolute.  *Heller* held,

> **Like most rights, the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose:  For example, concealed weapons prohibitions have been upheld under the Amendment or state analogues.  The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.**

 *Heller at* paragraph 2 of the syllabus.

{¶26} The Supreme Court of Ohio similarly held in *Arnold* that the right to

keep and bear arms was "subject to reasonable regulation" which, under the State's

police powers, must "bear a real and substantial relation" to secure "the health,

safety, morals, or general welfare of the public." *Arnold* at 46-47.  The Supreme

Court of Ohio further held that "there must be some limitation on the right to bear

arms to maintain an orderly and safe society while, at the same time, moderating

restrictions on the right so as to allow for practical availability of certain firearms

for purposes of hunting, recreational use and protection." *Id*. at 48.

{¶27} In this case, Johnson was charged with Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), which reads as follows.

**(A)  Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:**

**\* \* \***

**(2)   The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.**

{¶28} Johnson's "disability" was a juvenile adjudication for Burglary, which would have been a felony if committed by an adult.  Pursuant to R.C. 2901.01(A)(9), any violation of R.C. 2911.12(A)(1), (A)(2), or (A)(3)—the Burglary statute—is an offense of violence, and thus would create a disability.

{¶29} On appeal, Johnson argues, *inter alia*, that while felons can properly be restricted from possessing firearms, a juvenile adjudication for an offense that would be a felony *if* committed by an adult, was not, in fact, committed by an adult.  Thus a juvenile adjudication should not be treated as a *criminal* act.  Johnson argues, "Simply put, juvenile transgression[s], even serious ones, are not sufficient transgressions as to enable a lifetime deprivation to that individual of his fundamental constitutional rights." (Appt.'s Br. at 5).  In addition, Johnson argues that the restriction on the Second Amendment for a "generic 'burglary' offense

without any direct finding that the underlying criminal offense was also violent * * * in the case of a juvenile delinquency specifically, is not narrowly tailored to serve a significant government interest." (*Id*. at 8).

{¶30} In making his argument, Johnson acknowledges the Supreme Court of Ohio's recent decision in *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256. In *Carnes* the Supreme Court of Ohio considered the question of

> **whether using a prior juvenile adjudication of delinquency for the commission of an offense that would have been felonious assault if it had been committed by an adult as an element of the offense of having a weapon under disability as set forth in R.C. 2923.13(A)(2) violates due process.**

*Carnes* at ¶ 1.

{¶31} In *Carnes*, the Supreme Court of Ohio determined that using the juvenile adjudication for an offense that would be a felony offense of violence if committed by an adult to create a disability did not violate due process. The court in *Carnes* noted that that there was a legislative purpose in keeping firearms away from people who " ' "Congress classified as potentially irresponsible and dangerous." ' " *Carnes* at ¶ 15, quoting *Lewis v. United States*, 445 U.S. 55, 64-65, 100 S.Ct. 915 (1980), quoting *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498 (1976). The court in *Carnes* further held that, "[i]nherent in R.C. 2923.13(A)(2) is a policy decision made by the legislature that allowing weapons in the hands of individuals with certain prior juvenile adjudications poses an increased risk to public

safety[.]" *Carnes* at ¶ 16. The court in *Carnes* thus determined that even though there was no right to a jury trial in a juvenile case, it did not make "prior juvenile adjudications unreliable for *risk-assessment purposes*." (Emphasis added.) *Id*. at ¶ 17.

{¶32} However, while the Supreme Court of Ohio conducted the preceding analysis related to *due process*, the court in *Carnes* specifically declined to address whether criminalizing the possession of a firearm based upon a prior juvenile adjudication for a felony offense of violence violated the right to bear arms under the constitutions of the United States and Ohio because it was not raised in the trial or appellate courts. *Carnes* at ¶ 20.

{¶33} Nevertheless, despite failing to reach the precise issue in this case, some of the analysis by the court in *Carnes* is instructive here, as the legislature *does* have an interest in keeping weapons out of the hands of certain individuals, and a juvenile adjudication for an offense of violence *could* be a valid risk-assessment tool. In addition, as *Carnes* noted, a juvenile under similar circumstances to Johnson is not permanently prevented from acquiring a firearm. The legislature created a process wherein an individual could seek relief from disability under R.C. 2923.14(A)(1). Similar to *Carnes*, it does not appear Johnson availed himself of this process to have his second amendment rights restored.

{¶34} Moreover, although we acknowledge that Johnson's challenge in this case is a novel issue in our district, and relatively novel in Ohio, other courts around the country have addressed similar issues and upheld constitutional restrictions on the right to bear arms that are based on juvenile adjudications after the *Heller* decision was released.[4] *See In re C.W.*, 8th Dist. Cuyahoga No. 106465, 2018-Ohio-3172, ¶ 13 (summarily denying an argument that an adjudication for Having Weapons While Under Disability violated the Second Amendment); *see also Minnesota v. Meadows*, Minn.App. No. A13-1023, 2014 WL 3396238; *U.S. v. Mendez*, 584 Fed.Appx. 679 (9th Cir.2014); *California v. Villa*, 3d Dist. California 178 Cal.App.4th 443, 100 Cal.Rptr.3d 463; *Prekker v. Commonwealth*, 66 Va.App. 103, 782 S.E.2d 604 ("Accordingly, viewing the Second Amendment right as a historical matter, a ban on possession by a juvenile who was adjudicated delinquent for a felonious act rests on the same footing as the presumptively constitutional ban on a felon possessing firearms"); *Chardin v. Police Com'r of Boston*, 465 Mass. 314, 989 N.E.2d 392 (2013) (prohibition of a license to carry firearms to an individual who has been adjudicated a delinquent child for the commission of a felony is not a criminal penalty, not cruel and unusual punishment, and is permissible under the Second Amendment).

---

[4] We recognize that there are distinctions amongst these cases, but assessing them broadly, they support restrictions on the Second Amendment for prior juvenile adjudications.

{¶35} In sum, the legislature has made a policy decision to exclude those with certain prior juvenile adjudications from possessing firearms. *See State v. Cheatham*, 9th Dist. Summit No. 28859, 2019-Ohio-122, ¶ 5. As courts have held, "[I]t remains permissible to seek to keep firearms out of the hands of irresponsible persons." *Catucci v. Benedetti*, 27 Mass.L.Rptr 385, 2010 WL 4072790. Although a juvenile adjudication is *not* a criminal conviction, the legislature is wholly within its powers to use that juvenile adjudication for an offense that would be a felony offense of violence if committed by an adult as a "risk-assessment" tool. The legislature even elected to tailor the Having Weapons While Under Disability statute related to juvenile adjudications to those adjudications that would be felony offenses of violence if committed by an adult, *and* provided a means to remove the disability. We cannot find under these circumstances that R.C. 2923.13(A)(2) is unconstitutional facially, or as applied to Johnson. For all of these reasons, Johnson's first assignment of error is overruled.

*Second Assignment of Error*

{¶36} In Johnson's second assignment of error, he argues that the trial court erred by denying his motion to dismiss the Having Weapons While Under Disability charge on the basis of his argument that Burglary could be committed without

violence and therefore it was essentially improperly categorized as an "offense of violence."[5]

Analysis

{¶37} At the outset of our analysis, we note that the record is not entirely clear as to what degree of "Burglary" Johnson had been adjudicated delinquent for committing. We do not have a copy of the judgment entry from the juvenile court proceedings; however, the parties seem to be in agreement that Johnson had been previously adjudicated delinquent specifically for Burglary, and the arguments of the parties focus on Burglary in violation of R.C. 2911.12(A)(3) as though that is what his specific delinquency was for.

{¶38} According to R.C. 2911.12(D), whoever violates any of the (A) sections of R.C. 2911.12 is guilty of Burglary. Pursuant to R.C. 2911.12(D), a violation of R.C. 2911.12(A)(1) or (A)(2) is a felony of the second degree, and a violation of R.C. 2911.12(A)(3) is a felony of the third degree. Revised Code 2901.01(A)(9) defines "[o]ffense of violence" as any violation of numerous code sections, including violations of R.C. 2911.12(A)(1), (A)(2), or (A)(3). Thus assuming Johnson was adjudicated delinquent for Burglary under R.C.

---

[5] Johnson's second assignment of error seems to also challenge the relative constitutionality of R.C. 2923.13(A)(2) as applied to him, which makes the legal authority cited in the previous assignment of error applicable to this assignment.

2911.12(A)(3), it was a felony of the third degree and an offense of violence as classified by the legislature.

{¶39} Nevertheless, although a violation of R.C. 2911.12(A)(3) is facially listed as an "offense of violence" (which would lead to a disability under R.C. 2923.13(A)(2)), Johnson argues that Burglary under division (A)(3) requires a person by force, stealth, or deception to trespass in an occupied structure with purpose to commit "any criminal offense." He contends that since the offense could be theft, and since the trespass could be stealth, there may be no actual violence involved in the Burglary whatsoever. He argues specifically in this instance there was no actual violence and that his juvenile adjudication for Burglary should not be summarily classified as an offense of violence.

{¶40} As noted by the State, Johnson ignores the *potential* for violence when trespassing in an occupied structure. *See State v. Johnson*, 8th Dist. Cuyahoga No. 47495, 1984 WL 5571 ("Burglary is an 'offense of violence,' since it involves a significant risk of physical harm.") There is also an expectation of security in a home or occupied structure, which increases the risk for violence.

{¶41} Based on the dangerous nature of a Burglary, we cannot find that it is unreasonable for the legislature to include it as an "offense of violence," particularly for risk-assessment purposes in determining a disability under R.C. 2923.13(A)(2). To the extent that Johnson argues his second assignment of error as a separate

avenue of an "as applied" or "facial" constitutional attack on R.C. 2923.13(A)(2), it is not well-taken. Therefore we do not find that the trial court erred in denying his motion to dismiss on this basis. Accordingly, Johnson's second assignment of error is overruled.

*Third Assignment of Error*

**{¶42}** In Johnson's third assignment of error, he argues that the trial court erred by overruling his suppression motion. Specifically, he contends that the custodial interrogation conducted on December 18, 2018, contained "intentionally-elicited inculpatory answers" regarding Johnson's drug use prior to *Miranda* warnings being given to him. (Appt.'s Br. at 12).

Standard of Review

**{¶43}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*; *see also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must

independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

Analysis

{¶44} A copy of the entire custodial interrogation of Johnson on December 18, 2018, was introduced into evidence at the suppression hearing in this matter. The video is slightly under one hour and eight minutes. At approximately 33 seconds into the video, two detectives enter into a room wherein Johnson is already present and seated. (State's Ex. 1). The detectives introduce themselves, take seats at the table with Johnson, and then one of the detectives indicates that she is going to get some personal information from Johnson. (*Id.*) The detective states that after she gets the personal information from Johnson she will then read Johnson a form, and if he wanted to talk to the detectives they would talk, and if not, they would not. (*Id.*)

{¶45} For nearly the next two minutes, Johnson is asked "routine" background/booking questions such as his name, his date of birth, his social security number, his home address, his phone number, his employment status, and how far he went in school. (*Id.*) Then he is asked if he feels like he is currently under the influence of drugs or alcohol, which he shakes his head to respond in the negative. (*Id.*)

**{¶46}** Next, Johnson is asked whether he regularly uses drugs or alcohol, and he nods his head yes. (*Id.*) Johnson is asked what he regularly uses, and he states "marijuana." (*Id.*) He is asked if there are things that he "dabbles with" and he responds "wax," though he does not know what all is in it. (*Id.*) Johnson is asked if he has ever used heroin or meth and he responds specifically saying not heroin. (*Id.*) He is then asked what prior felonies he has on his record, and he says "Weapons Under Disability." After this question, Johnson is read a *Miranda* form, he signs it, and indicates that he is willing to talk to the detectives.

**{¶47}** Johnson argues that the questioning prior to the *Miranda* form being read in this matter was improper. Johnson argues that while the trial court found that the questions were merely "background questions," there was no reason the questions could not have been asked following a *Miranda* warning. In addition, Johnson argues that the questions about his drug use were improper given that he was ultimately being questioned about his possession of drugs. He contends that the pre-*Miranda* questioning tainted the post-*Miranda* questioning related to drugs that were found near Johnson during a search of the residence he was in.

**{¶48}** As the trial court stated in its entry, the questions related to Johnson's personal history were not required to be prefaced with *Miranda* warnings. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 33. In addition, in order to determine if a *Miranda* waiver would even be valid, it would be reasonable to ask an individual

if the individual was under the influence of any drugs. Related to this, the detective asked Johnson what drugs he used, perhaps in an attempt to see if he may be suffering from some withdrawal. Based on the facts presented, the trial court found that all questions were simply background questions, which did not require *Miranda* warnings.

{¶49} In our own review of the matter, we find that the majority of the questions asked could certainly fall into the nature of reasonably relatable police administrative concerns. *Hale* at ¶ 33. To the brief and limited extent here that Johnson was questioned prior to *Miranda* warnings being given, we cannot find that the trial court erred in determining that those questions were related to "routine booking information." We take some issue with this classification regarding the last pre-*Miranda* question asking whether Johnson specifically had ever used heroin, particularly in view of the fact that possession of heroin was one of the charges for which he was under investigation. However, under the totality of the circumstances and pursuant to the factors set forth in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601 (2004), and *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶¶ 30-31, we cannot find that this questioning in any way "tainted" the rest of the lengthy interview such that any of the statements should be suppressed. Moreover, on the record before us, we cannot find that there was any questioning here that was designed to elicit incriminatory admissions, or anything that rose to the level of

suppressible police misconduct. *See Hale* at ¶ 33. Therefore, Johnson's third assignment of error is overruled.[6]

*Fourth Assignment of Error*

{¶50} In Johnson's fourth assignment of error, he argues that the trial court should have suppressed the interrogation in this matter because the *Miranda* warnings were inadequate. Specifically, he contends that the notification of his right to consult an attorney before questioning, or to have an attorney present during questioning, was not adequately explained.

Analysis[7]

{¶51} In this case, when the detective is about to advise Johnson of his *Miranda* rights, she gives him a written form to read along with as she reads his rights to him. Before reading the form, the detective advises Johnson that if he has any questions or if there is anything he does not understand, to let her know. A *Miranda* form was then read to Johnson, which contained the following language.

> **It is my duty to advise you that under the constitution of the United States and the Constitution of the State of Ohio you do not have to make any statement and if you do make a statement what you do say may be used against you in court. You are further advised that if you do wish to make a statement, you have a right to have your attorney present during the taking of the statement and if you do not have the funds to employ an attorney then an**

---

[6] We note that the State actually agreed not to use any of the pre-*Miranda* statements at trial and Johnson still elected to enter his no contest plea. While this does not impact the legality of the statement, Johnson still could have proceeded forward in the case presumably without this information being presented if he felt it was prejudicial.

[7] The same suppression standard of review from the third assignment of error is applicable here.

> **attorney will be appointed without any expense to you to represent and advise you.**

(State's Ex. 1).[8]

{¶52} After the form was read to Johnson, which he appeared to read along with on the copy in front of him, the detective summarized four important points for Johnson to be aware of: 1) that Johnson did not have to talk to her if he did not want to; 2) that if he wanted to talk but he wanted to wait until he had an attorney present they could do that, it would just be at a different date and time; 3) that the things they discussed would not be just between them as they would be stated in a report and shared with the court if applicable; and 4) that if Johnson did not have the funds to employ an attorney one would be appointed for him free of charge. (*Id.*) The detective then asked if Johnson understood and if he had any questions. Johnson did not have any questions at that time.

{¶53} The detective continued by reading a second part of the written form, which stated that Johnson had his rights read to him, that he was willing to answer questions and make a statement, that he did not want an attorney at that time, and that no promises or threats were made to him. Again, the detective summarized this portion of the written form after reading it to Johnson, reiterating what she had just read. The detective then asked if it all made sense, and asked whether Johnson had

---

[8] The form itself is not included in the record. The admonishment is transcribed from the interrogation video.

any questions. Johnson again did not have any questions. At that point, the detective asked Johnson if he wanted to discuss the case, and Johnson said, "I guess." (*Id*.) Afterward Johnson signed the written *Miranda* waiver.

{¶54} On appeal, Johnson argues that the *Miranda* warnings were insufficient because he claims he was not told about the right to consult with an attorney prior to the interrogation.

{¶55} Contrary to Johnson's argument, we find that the preceding statements made by the detective were compliant with *Miranda*. In fact, we considered essentially the exact same argument related to an alleged *Miranda* deficiency in *State v. Smith*, 3d Dist. Allen No. 1-17-50, 2018-Ohio-1444, ¶¶ 19-21, and found that there was no deficiency merely because the exact language the defendant wanted to be used was not used.

{¶56} The record does not demonstrate any deficiency in the *Miranda* warnings given to Johnson and, in fact, it demonstrates clear compliance with *Miranda*. *See id*. All indications are that Johnson was fully aware of the rights he was waiving, that he was fully apprised of his right to consult an attorney, and that he could have an attorney appointed for him if he could not afford one. For these reasons, Johnson's fourth assignment of error is overruled.

*Conclusion*

**{¶57}** For the foregoing reasons Johnson's assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**